**NEW DYCKMAN THEATRE CORP.,**
**Plaintiff,**

v.

**RADIO–KEITH–ORPHEUM CORPORA-**
**TION et al., Defendants.**

United States District Court
S. D. New York.

Sept. 3, 1954.

William Gold, New York City, for plaintiff.

O'Brien, Driscoll & Raftery, New York City, for Defendants Radio-Keith-Orpheum Theatres, Inc., and RKO Theatres Corporation. George A. Raftery, New York City, of counsel.

R. W. Perkins, New York City, for defendants Warner Bros. Pictures, Inc., and Warner Bros. Pictures Distributing Corp.

Dwight, Royall, Harris, Koegel & Caskey, New York City, for defendants Twentieth Century-Fox Film Corp. (New York) and Twentieth Century-Fox Film Corp. (Delaware).

Donovan, Leisure, Newton & Irvine, New York City, for defendants RKO Radio Pictures, Inc., RKO Pictures Corp., and Radio-Keith-Orpheum Corp. (dissolved). James V. Hayes, New York City, of counsel.

Schwartz & Frohlich, New York City, for defendants Stanley Warner Corp., and Warner Bros. Circuit Management Corp., now known as Stanley Warner Management Corp. Everett Frohlich, New York City, of counsel.

Adolph Schimel, New York City, for defendants Univeral Pictures Company, Inc., and Universal Film Exchanges, Inc.

DAWSON, District Judge.

This is an action seeking triple damages for claimed violations of the Anti-Trust laws, 15 U.S.C. § 15, 15 U.S.C.A. § 15. Two motions have been made:

The first motion is made by the defendants to strike the complaint on the ground that the complaint fails to comply with the requirements of Rule 8(a) (2)[1] and Rule 8(e)(1) [2] of the Federal Rules of Civil Procedure, 28 U.S.C.A., or, in the alternative, for an order pursuant to Rule 12(f) [3] of the Federal Rules of Civil Procedure striking certain allegations from the complaint on the ground that they are redundant and immaterial.

The second motion made by the defendants is for an order pursuant to Rule 33 of the Rules of Civil Procedure striking interrogatories propounded by the plaintiff or, in the alternative, modifying and limiting said interrogatories.

The motion to strike the complaint will be first considered. The complaint in this action apparently attempts to allege (if you can cull the essential allegations from a mass of prolix verbiage) that in or about July, 1953, plaintiff acquired a long-term lease on the Dyckman Theatre located in the Borough of Manhattan, New York City, and that plaintiff renovated the theatre so to make it suitable in all respects for exhibition of neighborhood first-run of pictures; that in or about July, 1953, each of the defendant distributors was notified that plaintiff intended to open the theatre in or about October, 1953, and that it desired to be serviced with neighborhood first-run product of the RKO "split"; that the premises were completed and opened for business on October 23, 1953, and have been in operation by plaintiff since that date; that immediately preceding the date of opening and since that time, plaintiff has made repeated demands on the defendant-distributors that they each license their product for neighborhood first-run at such theatre, and that each of the defendant-distributors and producers has failed and refused to comply with such demand or to negotiate with plaintiff for exhibition of their product at plaintiff's theatre for a non-exclusive neighborhood first run; that the refusal of the defendants is based upon a conspiracy among them and among favored theatre operators, and is not based on the normal and legitimate best interests of defendant-distributors; and that by reason of the conspiracy and conduct of the defendant-distributors and their co-conspirators, plaintiff has been, and continues to be, unreasonably deprived of free and open access to the product of the defendant-distributors and barred from the right to negotiate for the exhibition of features on a non-exclusive neighborhood first run in accordance with its preference and desire, all to the damage and detriment of the plaintiff.

Such a complaint, if so stated, would be a short and plain statement of the claim in accordance with the provisions of Rule 8 of the Rules of Civil Procedure. Such a complaint, if sustained by proof, and in absence of rebuttal by defendants, would be sufficient to establish a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, Milgram v. Loew's, Inc., 3 Cir., 1951, 192 F.2d 579.

However, the plaintiff in this case is not content with a short and plain statement of the claim, but includes in the complaint a series of allegations of all

1. This Rule provides that: "A pleading which sets forth a claim for relief * * * shall contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief * * *."

2. This Rule provides that: "Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."

3. This Rule provides that the Court may, upon motion made within the time provided therein, "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

the misdeeds of the motion picture industry from the nineteen twenties to date, the relevancy of which to this particular complaint it is hard to fathom.[4]

The extent to which certain types of cases, such as triple damage anti-trust actions, have consumed the time of the courts has been a matter of great concern to those charged with the administration of justice.[5] See Report of the Judicial Conference of the United States on "Procedure in Anti-Trust and other Protracted Cases", 13 F.R.D. 62. This Report points out that cases of this sort are of sufficient frequency "to create an acute major problem in the current administration of justice." 13 F.R.D. at page 64. The Report makes certain recommendations. One significant observation is:

> "It is not practical to proceed in these cases as in a lawsuit of ordinary complexity and bulk; that is, to let the parties exhaust the crossfire of pleading, to conduct open-court pre-trial hearings, or to let counsel try the case as they please.

The potential range of issues, evidence and argument is so great, and the necessities of adversary representation so compelling, that the activities of counsel will result in records of fantastic size and complexity unless the trial judge exercises rigid control from the time the complaint is filed." 13 F.R.D. at page 66.

■ This admonition should be taken seriously by the Bench and Bar. A complaint should not be allowed to wander far afield or include what Judge A. N. Hand with his gift for felicitous phrasing has aptly described as "a great amount of archeology".[6] It is particularly important in this type of case that the complaint state the issue concisely and succinctly so that the issue may be framed with definiteness.

■ In such a complaint, it is not necessary to allege a great deal of history of past decades. Once a cause of action for violation of the Anti-Trust laws is established, "it adds nothing that the

---

4. A striking example of how far afield the plaintiff goes is shown in paragraph 6 (a) of the complaint, which reads as follows:

"6. (a) Pursuant to and in furtherance of such conspiracy the distributors, *acting in concert and in combination with* and for the benefit of the exhibitor affiliates of some of them and of favored local exhibitors in various cities and local areas, including greater New York, have discriminated against local independent exhibitors, including plaintiff, to the favor and advantage of the affiliated exhibitors and such locally favored exhibitors in such areas, as to runs and clearance; film rentals; maintenance of minimum admission prices, etc.; advertising allowances; deduction in film rentals on playing of double features; deduction in film rentals for extra expense incurred for patronage stimulants; in granting of move-overs, extended runs and day and date runs; in selection and rejection of films theretofore contracted; forcing tie-in sales (block booking); in the granting of road show and so-called prerelease showings and privileges; as to requirements respecting playing of foreign produced pictures; playing of pictures on preferred play dates; overage and underages (i.e., permitting commitments for one theatre to be worked off in other theatres of the same exhibitor or its affiliate); playing of pictures out of order of release; *bidding for pictures*; checking box office receipts and auditing books; in determining 'split figures' (allowance for theatre operation expense on percentage rental pictures); guaranteed minimum film rentals; joint advertising; campaigns; rebates, discounts or allowances as to film rentals and advertising and other elements of exhibition expense."

5. This is particularly true in the large Metropolitan districts such as the Southern District of New York where the calendars are far behind, and, as a result, litigants are forced to wait for years before their cases can be reached for trial.

6. A. N. Hand "Trial Efficiency", Symposium on Business Practices under Federal Anti-Trust Laws (C.C.H. Anti-Trust Laws 1951, pp. 31-32).

calendar of years gone by might have been filled with transgressions." United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978.

It is not merely that a complaint which fails to observe this principle does not comply with Rule 8(a)(2). Even more important is the fact that such a complaint, if allowed to stand, becomes a springboard from which the parties dive off into an almost bottomless sea of interrogatories, depositions, and pre-trial proceedings on collateral issues, most of which may have little relationship to the true issue in the case. The result is that the time of the court and counsel may be wasted and the parties put to needless expense and sometimes to improper harassment. It should be the duty of the court, at the outset, to see that the issue in the case is defined without unnecessary detours, for only by so doing may the future progress of the action be kept within its proper channel.

An allegation that the particular damages suffered by this plaintiff are the result of a nationwide conspiracy may be a proper allegation in a complaint. Metropolitan Theatre Co. v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y.1952, 12 F.R.D. 516. However, it does not seem necessary, in order to establish a triple damage anti-trust action involving events in 1953–1954 relating to one theatre in New York City, to assert in the complaint, or to present in evidence, all of the wrongdoings of the motion picture industry for the last thirty years. The issue in the instant case should be whether there was a combination or conspiracy in existence on or subsequent to October 23, 1953, and whether plaintiff was injured as a result thereof.

The practices of the motion picture industry in connection with its distribution system and its procedure for clearance was the subject of long and protracted litigation in an anti-trust case brought by the government. The case was started in this Court in 1938 and finally disposed of in 1950. See United States v. Paramount Pictures, D.C., 1946, 66 F.Supp. 323; Id., 1948, 334 U.S. 131, 68 S.Ct. 915, 924, 92 L.Ed. 1260. The Supreme Court in its opinion stated:

"The District Court enjoined defendants and their affiliates from agreeing with each other or with any exhibitors or distributors to maintain a system of clearances, or from granting any clearance between theatres not in substantial competition, or from granting or enforcing any clearance against theatres in substantial competition with the theatre receiving the license for exhibition in excess of what is reasonably necessary to protect the licensee in the run granted. In view of the findings this relief was plainly warranted."

There certainly should be no reason for retrying all of the issues of that involved piece of litigation in the present action. If some of the practices condemned by the Court in that case continued, and were continuing in 1953, it should be sufficient to assert that fact; the fact that such practices had existed in decades long past and were condemned by the Court clearly appears from the decree in the Paramount case.

■ The present complaint is a complete violation of Rule 8.

Paragraphs 5, 6, 7, and 8 of the complaint refer to practices which are alleged to have been in existence "from some time in the 1920's." Such "archeology" tends to confuse the issue. It adds nothing to the essential cause of action.

These paragraphs also refer to numerous alleged practices, many of which have no relationship to the specific matter complained of in paragraph 10 of the complaint. Such allegations are not pertinent to the complaint.

Paragraph 5(b) of the complaint relates to "local manifestations of a single national conspiracy" alleged to have

taken place in Chicago, Kansas City, Allentown, Bethlehem, Dallas, Ambridge, San Francisco, Oakland, Los Angeles, Minneapolis, Athol, Quincy, Greenville, Denver, Olean, Milwaukee, and Philadelphia. Is the time of court and counsel in this case to be taken up with proof of transactions and controversies in numerous other cities throughout the entire country which would have little or nothing to do with the particular cause of action asserted by this particular theatre in the City of New York? Is relief sought in this case because the alleged conspiracy of the defendants may have resulted in wrongs to other persons in other jurisdictions in other years?

The complaint will, therefore, be stricken, with leave to plaintiff to file, within thirty days, an amended complaint which contains simple, concise, and distinct averments, and conforms with Rule 8. The order to be entered hereon shall set a date, subsequent to the time that answers are due, at which an informal pre-trial hearing will be held so that the issues as set forth in the amended complaint and answers may be particularized and the bounds of permissible discovery formulated, as suggested in the recommendations contained in the Report of the Judicial Conference, to which reference has heretofore been made.

In view of the determination of the motion to strike the complaint, it becomes unnecessary at this time to dispose of the motion striking the interrogatories propounded by the plaintiff or modifying or limiting said interrogatories. It might be pointed out, however, that the interrogatories propounded are a graphic illustration of the evil that may flow from a loosely and improperly drawn complaint.[7] It has been stated by the defendants that simply to answer these interrogatories would require the assignment by defendants of a large staff of employees to the task on an overtime basis, and would result in tremendous expenditures by the defendants in preparing the necessary data.

The fact that it might be necessary to incur substantial expense to answer interrogatories is, of course, no reason in itself to sustain objections to interrogatories. Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., D.C.S.D.N.Y. 1952, 12 F.R.D 531. But to file a complaint such as this, and then to require defendants to incur tremendous expense to answer interrogatories on matters of history long since past may well open the door to the use of our liberal Federal Rules for purposes of harassment rather than for the production of competent evidence. See "Tactical Use and Abuse of Depositions under the Federal Rules", 59 Yale L.J. 117 (1949).

In passing upon interrogatories, it is customary for the court to inquire whether they are relevant and material,

7. The interrogatories would, among other things, have called for the defendants RKO Pictures, Inc., RKO Pictures Corporation, their subsidiaries, affiliates, predecessors or assigns to have set forth for every year from 1927 to the date of the complaint the name of each feature picture released, the total gross receipts from rental fees of each such picture where the gross receipts placed such picture within the upper half of all such pictures released in such year, and further information for all of such 25 years, in great detail, as to the exhibition of such pictures in any theatre in the Counties of New York, Kings, Queens, Richmond, Bronx, Nassau, and Westchester in the State of New York, and the Counties of Hudson, Bergen, Essex, Passaic, Union, Middlesex, Morris, and Somerset in the State of New Jersey. The answers to these interrogatories would have required details concerning many thousands of films displayed in hundreds of theatres showing, among other things, such diverse items as each theatre's location, its affiliation at such time, the agent that booked the engagement, the theatre's availability, the picture's play dates, the scale of admission prices charged, the gross admission, the film rental fees, and similar data concerning co-features played on the same bill as the feature in question.

but to determine from the complaint itself their relevancy and materiality. It is for this reason that it is particularly important in a case such as this to have the issues properly and succinctly stated so as to avoid a dragnet type of interrogatories being presented which would require, at great expense, answers with reference to past history which might seem to be relevant under the language of the complaint as stated, but which would have no relevancy to a complaint properly stated in accordance with Rule 8.

Settle order on notice.