Francis J. CURTIS, Trustee in Bankruptcy of B. P. R. Corporation, Plaintiff,

v.

LOEW'S Incorporated et al., Defendants.

Civ. A. No. C-203-55.

United States District Court
D. New Jersey.
June 10, 1957.

Stein, Stein & Engel, Jersey City, N. J., by Howard Engel, Jersey City, N. J., and Richard Orlikoff, Chicago, Ill., for plaintiff.

Toner, Crowley, Woelper & Vanderbilt, Newark, N. J., by Willard G. Woelper, Newark, N. J., for defendants.

WORTENDYKE, District Judge.

This opinion is evoked by defendants' motion on objections to plaintiff's interrogatories. The action is for treble damages under Section 4 of the Clayton Act (15 U.S.C.A. § 15), and an epitome of the allegations of the complaint is afforded in an earlier opinion of this Court in the same litigation, reported in D.C., 147 F.Supp. 398.

The indicated bankrupt corporation is alleged to have been lessee and operator of three motion picture theaters in the City of Chicago, viz.: Royal Theater, 1453 Milwaukee Avenue, Banner Theater, 1611–13 North Damen Avenue and Paulina Theater, 1339 North Paulina Street. The period of claimed damage charged as resulting from the actions of the defendants complained of is designated as that extending from March 1, 1944 to June 10, 1951.

In arriving at the following conclusions the Court has considered the oral arguments of counsel and filed briefs; also, the letter from plaintiff's attorney dated May 14, 1957, the documents enclosed therewith, and the letter of defendants' attorneys of June 5, 1957, relating to the foregoing.

Defendants' Objections to Plaintiff's
Interrogatories Dated
April 16, 1956.

■ 1. Defendants' comprehensive objection to all of plaintiff's interrogatories is overruled. Leonia Amusement Corp. v. Loew's Incorporated, D.C.N.Y. 1955, 18 F.R.D. 503; New Dyckman Theater Corp. v. Radio-Keith-Orpheum Corp., D.C.N.Y.1954, 16 F.R.D. 203, 207.

■ 2. Defendants impugn the relevancy of the following groups of plaintiff's interrogatories, viz.:

| Nos. | | | |
|---|---|---|---|
| 2 through 20 | 50 | 86 | |
| 22 | 51 | 88 | |
| 23 | 61 through 63 | 89 and | |
| 26 | 65 through 71 | 92. | |
| 35 through 38 | 80 through 84 | | |
| 44 through 47 | 85a | | |

"In passing upon interrogatories, it is customary for the Court to inquire whether they are relevant and material, but to determine from the complaint itself their relevancy and materiality." New Dyckman Theater Corp. v. Radio-Keith-Orpheum Corp., supra, at page 207.

The presently objecting defendants have not moved to strike the complaint. They may not collaterally attack it by way of objections to interrogatories. The complaint remains as part of the framework of issues from which the relevancy of the interrogatories may be appraised. Plaintiff's burden in a case of this kind, and the appropriate judicial attitude toward his efforts to discharge that burden, are clearly expressed by Judge Yankwich in Fanchon & Marco v. Paramount Pictures, D.C.Cal.1951, 100 F.Supp. 84, at page 89, affirmed 9 Cir., 1954, 215 F.2d 167, certiorari denied 1955, 348 U.S. 912, 75 S.Ct. 293, 99 L.Ed. 715, where he says:

"So he who claims to have been injured by such preference must show (a) that the preference was the result of concert of action between the defendants, (b) that it was unreasonable and not based upon the various factors which courts have considered as reasonable considerations entering into the determination,—such as admission price, location of a theatre, its policy with regard to the showing of double features, gift night and other exploitation methods, the rental terms, the extent to which comparative theatres compete with each other, —and (c) that he has been damaged by such action.

"As to the manner of proof, the Courts have adopted a liberal attitude and have permitted inferences of *joint* action to be drawn from *parallel* action."

See also Stanzler v. Loew's Theater and Realty Corporation, D.C.R.I.1955, 19 F.R.D. 286.

The interrogatories in the first of the foregoing groups seek answers which will disclose facts required by the plaintiff to support his charges of monopolization, discrimination, restraint of competition, and conspiracy which are clearly set forth in the complaint. Information sought will either constitute evidence for the plaintiff or may be reasonably expected to lead to evidence required by the plaintiff to support the charges. The situation presented by the issues framed by the pleadings in the present case is, in numerous aspects, similar to that recognized as supporting a cause of action for treble damages in United States v. Paramount Pictures, 1947, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260. Most, if not all of the violations of the anti-trust laws found to exist in Paramount are charged to have taken place in the case at bar. While it is true that the present plaintiff's bankrupt, hereinafter referred to as B. P. R., did not commence to operate its three theaters until March 1, 1944, and that its termination of the operation of Paulina Theater took place on June 10, 1951, the pleaded so-called "Chicago System" of film licensing, with all the criticized phases of participation therein by the defendants, renders clearly relevant to the present issues the series and background of negotiations, agreements, practices, understandings, conspiracies and acquiescence and participation in concerted conduct claimed to have adversely affected B. P. R. despite their origin prior to the commencement of theater operation by B. P. R. As the plaintiff properly points out in his memorandum, the incorporation in Rule 33 of the Rules of Civil Procedure, 28 U.S.C.A., of the provisions of Rule 26(b) thereof enunciates the criterion determinative of the propriety of a discovery interrogatory that the matter inquired into must be relevant to the issues in the action *or* must appear reasonably calculated to lead to the discovery of *admissible evidence.* Vilastor Kent Theater Corp. v. Brandt, D.C.N.Y.1955, 18 F.R.D. 199. More specifically, even though an agreement among the defendants may have been originally entered into prior to the commencement by B. P. R. of its theater operations, the terms of that agreement, if adhered to by the defendants during the period of the bankrupt's theater operations, are not only relevant but may, in themselves, be evidential of some of the anti-trust violations charged in the complaint. In any event, they would seem to afford a likely avenue to discovery of relevant, and therefore admissible, evidence of the motives, reasons and objects of the conduct complained of. The complaint in the case at bar is not "notice pleading", but a very comprehensive narrative and catalog of acts, conditions and consequences extending over a period of time commencing prior to the entry of B. P. R. into theater operation in Chicago. Viewed against the allegations of the complaint as elaborated by the testimony of Ben Eisenberg, given in his pretrial deposition, the number and scope of the charges upon which the plaintiff bases his claim to recovery renders relevant and proper the group of interrogatories immediately under discussion.

This Court does not feel that it can properly decide any of the ultimate issues in this case as a means of determining at this stage of the proceedings the propriety of the interrogatories under attack. The general principles stated in the various authorities cited by the objecting defendants in their brief on the present motion are, of course, sound, but are not of controlling application here.

Passing to interrogatory No. 22, while the period of time therein referred to commences prior to the commencement of bankrupt's theater operations, that period terminates well within the period of such operation and the question asks for changes effected in the exhibition run for each theater, the motive, reason and objective behind each of which changes may only appear from facts surrounding the inception of the system of runs to

which the question relates. A similar situation is implicit in the inquiry in interrogatory No. 23. I therefore find both of these two interrogatories proper.

Counsel for defendants emphasizes the necessity for "clearances" in the allocation of licenses for motion picture film exhibition, but one of the questions which must arise in the present case involves the determination of the reasonableness of the "clearance" granted by defendants under licenses to favored theaters, for the purpose of concluding whether such "clearance" grants were discriminatory, or tended to restrain competition. Cf. Chorak v. RKO Radio Pictures, 9 Cir., 1952, 196 F.2d 225, certiorari denied 344 U.S. 887, 73 S.Ct. 186, 97 L.Ed. 686. I therefore find interrogatory No. 26 proper.

The next group (Nos. 35 through 38) comprises inquiries into the identity of exhibiting theaters paying defendant distributors differing rates for film rentals; whether minimum admission prices were imposed by the distributors at any time on exhibiting theaters since January 1, 1942; the relationship, if any, between the minimum admission price requirement and a particular feature picture; and knowledge (for the purpose of determining acquiescence or concert) on the part of any defendant that minimum admission prices had been designated by others. These interrogatories I also consider proper.

Interrogatories numbered 44 and 45 refer to licenses by the defendants of feature pictures to B&K and Essaness theaters, who are charged with having been favored over those of B. P. R. Interrogatories numbered 46 and 47 refer specifically named theaters of which the ownership and control may be shown to have resided in one or more of the defendants, or which may have been the beneficiaries of defendants' discrimination. I see nothing in the interrogatories themselves, when viewed in the light of the allegations of the complaint and the testimony of Eisenberg, which render these interrogatories objectionable, and I therefore sustain them.

Interrogatories numbered 50 and 51 make inquiry respecting price allocations in licensing feature pictures for outlying runs in Chicago. I see no basis for criticizing these interrogatories and they are sustained.

Interrogatories numbered 61 through 63 evidently relate to the Eisenberg deposition and seek to bring home to defendants' knowledge, through their employees, the desire of the three therein named theaters for more advantageous playing periods. Defendants have not satisfied me that these interrogatories are improper. While I cannot visualize exactly how the plaintiff will fit the information secured through answers to these interrogatories into its proof picture on the trial, the broad scope of the complaint, supplemented by the deposition testimony of Eisenberg, induces me to feel that the inquiries in the criticized interrogatories are justified. They are therefore sustained.

I cannot concur in defendants' contention that interrogatories numbered 65 through 71 seek information which is irrelevant. Each of them points directly to specific charges of discrimination frequently reiterated in the testimony of Eisenberg. These questions also relate the asserted discriminations to the charge of consequent restraint of competition. The objections to the questions are over-ruled.

It seems apparent that interrogatories numbered 80 through 84 relate (1) to the general course of dealing (concededly over a period of time commencing prior to the operation of the B. P. R. theaters) tending to support the charge of discrimination in favor of B&K theaters; (2) to the operation by any of the defendants of the Palace Theater; and (3) to the receipt by any of the defendants of requests from any theater in Chicago for leave to bid or negotiate for the first or second outlying run in any zone established by the defendants. One can-

not read the Paramount case, supra, in the Supreme Court without being forced to the conclusion that the scope of inquiry apparent from the group of interrogatories presently discussed does not exceed the bounds of relevancy in the light of the charges in the complaint and the testimony of Eisenberg. These interrogatories are sustained.

Because two successive interrogatories put by the plaintiff are numbered 85, the defendants refer to the second of these two as No. 85a. The emphasis in interrogatory referred to as 85a seems to be on the words "substantial competition" and the answer to the inquiry may reasonably be expected to be offered in behalf of the plaintiff to show that there may have been some restraint of competition even though not substantial in character. The inquiry is therefore relevant and is sustained.

Interrogatory No. 86 is supportable upon the same theory as that which leads me to sustain its immediate predecessor, and it will be similarly treated.

Interrogatories numbered 88 and 89 go directly to the crux of this case as I understand it from the pleadings and the depositions, in view of the principles enunciated by our Supreme Court in the Paramount case above cited. They are therefore sustained as relevant.

Interrogatory No. 92 is also sustained for similar reasons.

3. Included in paragraph numbered 3 of defendants' objections to plaintiff's interrogatories are those which I have already dealt with and some others. The essence of the defendants' objection set forth in paragraph numbered 3 is the relation of the interrogatories therein enumerated to a period of time antedating March 1, 1944, when B. P. R. Corp. commenced operating the Banner, Paulina and Royal Theaters. An examination of all of the interrogatories criticized on this ground convinces me that they are proper because they may reasonably be expected to lead to evidence indicating intent, course of dealing, plan, concert of action, development of monopoly, effect on competition, and the numerous other elements which will be required to support some or all of the grounds of liability on which the plaintiff bases his right to recover in this action.

To be more specific, interrogatory numbered 1 seeks information regarding the relationships between the defendants on the one hand and Balaban & Katz and Essaness on the other, respecting the licensing of feature pictures for exhibition in Chicago. Although the commencement of the period of dealing between these parties in this connection is designated as January 1, 1940, the development of the ultimate relationship, which persisted when B. P. R. entered the situation, and which is alleged to have adversely affected its competitive opportunities, renders relevant the circumstances surrounding the inception of the arrangement, as well as the successive steps preceding and leading up to the commencement of the alleged adverse impact upon the theaters of the plaintiff. For similar reasons, the other interrogatories which relate to periods of time commencing before March 1, 1944, when tested by the appropriate criteria, seem to me to be entirely proper, and are therefore sustained. Milgrim v. Loew's Inc., 3 Cir., 1951, 192 F.2d 579, 584. Defendants' objections to the interrogatories listed in paragraph numbered 3 of their statement of objections are overruled.

4. and 5. Defendants criticize certain of plaintiff's interrogatories for the reason that they seek opinions and conclusions, some of them from a corporation or corporations. Of course, it is obvious that the individual mind may express a conclusion; while a corporation, having no mind cannot do so except as one of its officers or agents may be authorized and competent to speak for the corporation.

Typical of the interrogatories criticized on this ground is that numbered 20, which reads as follows:

"20. During the period from January 1, 1942 to November 1, 1947, were your pictures available to the Southtown Theater to play immediately following the Tivoli Theater? If so, state why they were made available to the Southtown Theater to play immediately following the Tivoli, and if not, why not."

This interrogatory comprehends three inquiries,—the first may be answered yes or no. It must, of course, be read in conjunction with the charges in the complaint and the inquiries in the other interrogatories from which the connotation of the adjective "available" will readily appear. Simply paraphrased, the first portion of the interrogatory seeks to learn whether Southtown was permitted to play pictures of the defendants immediately after the run at the Tivoli. That inquiry calls not for a conclusion, but for a positive or negative answer. The next subdivision of the interrogatory assumes an affirmative answer to the first part and seeks the reason for such availability; and the final query, against the possibility of a negative answer to the first part, seeks the reason for nonavailability. Certainly the defendant whose picture is referred to should know better than anyone else whether it was available to a specified exhibiting theater at any particular time, and if so, why, and if not, why not.

Defendants cite Judge Rodney's opinion in United States v. Columbia Steel Co., D.C.Del.1947, 7 F.R.D. 183, as authority for the claimed impropriety of the interrogatories for seeking a conclusion. The principle in Columbia Steel is well recognized. But it seems to me to be inapplicable to the interrogatories presently under consideration. Defendants say in their brief, page 34:

"Plaintiff's interrogatories 18, 19 and 20 are of the 'Why not?' type.

That is, they ask whether the defendants licensed certain theaters in certain ways, and, if not, why they did not do so."

Certainly the inquiry whether the defendants licensed certain theaters in certain ways does not call for an opinion or a conclusion, but merely seeks to extract information respecting the intent, the motives and the objectives of the defendants in acting as they did, and this is sought for the purpose of determining the relationship of their actions (or acquiescence) to monopolization, discrimination, and restraint of competition, allegedly adversely affecting B. P. R. As far as the "Why not" phase of the interrogation is concerned, the answer would not be an opinion, nor would it be a contention; but rather a reason, the relevancy of which to the question of the legality or illegality of the criticized action seems perfectly obvious. Because I do not find that the interrogatories in this group (enumerated in paragraph 4 of the defendants' objections) are argumentative in nature and call for answers in the nature of opinions or conclusions, I overrule the objections to them.

The same interrogatories which are criticized in objection number 4 of the defendant are also criticized in the objection numbered 5 on the ground that because the defendants are bodies corporate, and therefore artificial persons, the interrogatories cannot be answered because only a natural person can give an opinion. Because I have ruled that these interrogatories do not call for opinions, and because Rule 33 directs that interrogatories to a private corporation shall be answered by any officer or agent who shall furnish such information as is available to the party, I adhere to my decision to over-rule the objections to these interrogatories enumerated respectively in paragraphs 4 and 5 of the defendants' statement of objections.

 6. Finally, defendants object to such of the interrogatories as purport to be directed to "'affiliated, associated,

subsidiary and predecessor companies and corporations'" of the defendants. This objection is well taken. To so much of such interrogatories as purport to relate to such *unnamed* entities, I sustain the defendants' objections upon the authority of Stanzler v. Loew's Theater and Realty Corp., D.C.R.I.1955, 19 F.R.D. 286, and Savannah Theater Co. v. Lucas & Jenkins, D.C.Ga.1943, 10 F.R.D. 461.

An order may be presented in conformity with the views hereinabove expressed.