Henry KRUG, Sylvia Krug, Norman Krug and Adele Krug, Sole Surviving Directors, as Trustees in Dissolution of Krug Distributors, Inc., Plaintiffs,

v.

INTERNATIONAL TELEPHONE & TELEGRAPH CORPORATION, Vim Electric Co., Inc., and Vim Television and Appliance Stores, Inc., Defendants.

Civ. A. No. 488–55.

United States District Court
D. New Jersey.

June 11, 1958.

David Weinick, Newark, N. J., by Martin G. Stein, New York City, for plaintiffs.

Green & Yanoff, Newark, N. J., for defendant International Tel. & Tel. Corp., Laporte & Meyers, by Ernest S. Meyers, New York City, of counsel.

Jerome L. Kessler, Newark, N. J., for defendants Vim Electric Co., Inc., and Vim Television & Appliance Stores, Inc.

WORTENDYKE, District Judge.

Defendant International Telephone and Telegraph Corporation (IT&T) moves for summary judgment upon the first and second causes of action of the amended and supplemental complaint filed in this case on March 26, 1956. Prior motions to strike the fourth and fifth causes of action prevailed. The remaining (third) cause of action is against the co-defendants Vim Electric Co., Inc. and Vim Television and Appliance Stores, Inc. (Vim) only and is not presently under attack.

The nature of the case and a summary of the allegations contained in the various causes of action into which the amended and supplemental complaint is divided are disclosed in my opinion filed June 20, 1956, on the motion to strike that complaint, and reported in 142 F. Supp. 230, 234. In the alternative on the present motion IT&T requests this Court to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted, and thereupon, make an order specifying the facts that appear without substantial controversy and directing such further proceedings in the action as are just." The foregoing alternative relief should be the fruit of a pretrial conference.

For more convenient reference the summary of the allegations of the first and second causes of action which is set forth in my previous opinion on the motions to strike is hereto appended.[1]

The answer of this defendant (IT&T) admits its incorporation in the State of Maryland and maintenance of an office for the transaction of business in the State of New Jersey, and that subsequent to July 14, 1953, when it was merged with Capehart-Farnsworth Corp. (C/F), it manufactured and sold to wholesale distributors television receivers, radio receivers and phonographs in interstate commerce, in substantial and open competition with numerous other corporations. This defendant also admits that it manufacturers its merchandise in New Jersey and Indiana, shipping and selling the merchandise to its customers throughout the United States, and that it appoints and franchises independent distributors to sell its products to retailers throughout that territory. It is also admitted by this defendant that in 1953 a written franchise agreement was in effect between C/F and Krug Distributors, Inc. (Krug) and that prior to July 14, 1953 C/F, and thereafter IT&T, sold and shipped products to Krug from factories in New Jersey and Indiana. Except for the foregoing admissions, IT&T denies or denies knowledge of the allegations of the amended and supplemental complaint and affirmatively pleads:

(1) that such complaint fails to state a claim upon which relief can be granted against IT&T; and

(2) that any of the transactions complained of which involved C/F or IT&T

---

1. "The allegations to be considered are these: In 1953 and until August 1954, Krug was the sole wholesale distributor in the 'Newark Territory' for radio and television products of C-F and its successor, I. T. & T. During this time, I. T. & T. sold and shipped merchandise to Krug from factories in New Jersey and Indiana for resale to retailers. I. T. & T. knew that Vim was among Krug's customers or prospective customers. While Krug was the sole franchised wholesaler of I. T. & T. in the 'Newark Territory', I. T. & T. sold merchandise of like grade and quality as that sold to Krug directly to Vim and other 'favored retailers' at prices substantially lower than those charged to Krug. Such retailers were in competition with Krug's customers. Plaintiffs further allege that as a result of the foregoing 'non-favored retailers were unable effectively to compete with, and had to sell at higher prices than Vim and other favored retailers; competition between Krug's customers and favored retailers was substantially lessened; the favored retailers tended to and did receive a monopoly in the retail sale of I. T. & T. products; and the public, in order to obtain the benefits of the above price reductions, were compelled to divert their patronage from retailers in their normal purchasing areas to the stores of favored retailers, wherever they happened to be located.' As a direct consequence, the plaintiffs claim that Krug was injured in its business and property 'by reason of loss of profits and sales and losses and expenses necessarily incurred in connection with going out of business (as compelled by such loss of profits and sales) and otherwise.'

\* \* \* \* \*

"The second cause of action avers that I. T. & T. granted or paid allowances to 'favored retailers', particularly Vim, for alleged advertising and promotional purposes, but denied such allowances to Krug or its customers."

are within the exemptions provided by 15 U.S.C.A. § 13(a) because of the right of the seller to select its own customers in bona fide transactions and not in restraint of trade, and to effect price changes from time to time in response to changing conditions affecting the market for or marketability of its products because of obsolescence of seasonal goods, or sales in good faith in discontinuance of business in the line of goods concerned.

 Rule 56(c) of the Rules of Civil Procedure, 28 U.S.C.A., which is invoked by the present motion, conditions the right to a summary judgment upon the disclosure by the pleadings, depositions and admissions on file, together with any affidavits presented upon the motion, that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. If there appears to be a genuine issue of a material fact, this Court must deny the motion. The Court is not called upon to *decide* any issue of fact which may be presented. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016; Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580.

██ An examination of the pleadings discloses the following asserted issues, viz.:

(1) Was the merchandise sold by C/F or IT&T to Vim and other retailers of like grade and quality to that sold to Krug?

(2) If the answer to the foregoing question is in the affirmative, was the merchandise sold to Vim and to other retailers at substantially lower prices than those charged to Krug?

(3) Was Vim and were the other retailers to whom such merchandise was sold by C/F or IT&T in direct competition with Krug's customers?

(4) Were Krug's customers able to compete effectively with Vim and other retailers to whom C/F or IT&T sold merchandise of like grade and quality at prices substantially lower than those charged to Krug?

(5) Did the favorable price treatment by C/F or IT&T of Vim and other retailers adversely affect the competitive capacity of the retailers to whom Krug sold?

(6) Was Krug's competitive capacity adversely affected by the adverse effect upon Krug's customers of the alleged price favoritism by C/F or IT&T of Vim and other retailers?

(7) Did the prices which C/F or IT&T charged Vim and other retailers enable such purchasers to acquire a monopoly in the retail sale of merchandise manufactured by IT&T?

(8) Did the alleged price favoritism charged against IT&T induce the public to transfer its patronage from customers of Krug to Vim and the other retailers so favored?

(9) Were the criticized sales of C/F or IT&T to Vim and other retailers within the exempting provisos of 15 U.S.C.A. § 13(a), i. e., did the price discrimination of which IT&T is accused consist only of due allowances for differences in the cost of manufacture, sale or delivery resulting from the differing methods or quantities in which the merchandise was sold or delivered to such purchasers; or did the prices at which the criticized sales were made constitute appropriate responses to changing conditions affecting the market for or marketability of the goods concerned, resulting from obsolescence of seasonal goods or for the purpose of discontinuance of business in the goods?

(10) Did C/F or IT&T grant to Vim and other retailers allowances for advertising and promotional purposes which were not granted to Krug or Krug's customers?

Turning now to the interrogatories and answers thereto and to the affidavits submitted upon the motion, we seek to discern any genuine issue of fact existing between the parties to this motion.

In answers to Vim's interrogatories, Krug unqualifiedly denies that Krug sold any merchandise to Vim.

In response to interrogatories propounded by IT&T, Krug says that the retail recipients of the alleged lower and discriminatory prices, who were in direct competition with Krug's customers, were the "Vim defendants" and that the retailers alleged to have been favored by C/F or IT&T were Vim Stores. Plaintiffs conclude that IT&T's favoritism pricewise of Vim Stores substantially lessened competition between Krug's customers and Vim.

It is thus apparent that only the Vim Stores are charged as being the recipients of the benefits of the discriminatory prices or allowances of which the plaintiffs complain.

The customers of Krug who are alleged to have been adversely affected by the claimed favoritism by C/F or IT&T of Vim are stated by plaintiffs to be named in invoices furnished by the plaintiffs to IT&T. Copies of these invoices are annexed to the affidavit of Norman Marcus, an employee of counsel for IT&T, sworn to May 9, 1958, and submitted upon the present motion. They include retailers located in various places in the State of New Jersey, and these invoices disclose the catalogue number and unit price of each Capehart television receiver sold by Krug to its respective retailers during the period from June 12, 1953 to March 2, 1954, both inclusive.

Annexed to the affidavit of Chester H. Wiggin, Secretary and General Attorney of IT&T, and formerly C/F, sworn to April 5, 1958, are copies of all of the invoices for television sets sold by C/F and IT&T to Krug and Vim respectively, covering respective periods from June 12, 1953 to January 22, 1954, and June 26, 1953 to September 30, 1953, all dates inclusive. Mr. Wiggin denies, and so it appears from the invoices referred to, that C/F and/or IT&T sold any radio-phonograph or radio instruments to Vim in 1953 or 1954. He further deposes that the only sales of television sets made by C/F or IT&T to Vim in 1953 involved approximately 5,000 obsolete and discontinued models, for the purpose of cleaning out a warehouse to make room for the reception of new models manufactured or to be manufactured by the seller. It is also stated in the same affidavit that only five television models of like grade and quality were sold by C/F or IT&T to both Krug and Vim within the relevant period, and these five models were discontinued lines. The price of each receiver to Vim was approximately $2 less than that to Krug, and it is contended that this differential reflected the cost savings to C/F or IT&T resulting from the unloading to Vim of these models in large quantity, and the consequent freeing of needed warehouse facilities for the 1954 line of the manufacturer's production.

From the affidavit of A. William Benequit, former Vice-President and General Manager of Krug, filed in opposition to the present motion, it would appear that the television models sold by C/F or IT&T to Vim were not obsolete as IT&T contends. Benequit says that, on the contrary, they were current models. In this connection it is interesting to note that of the five television models claimed to be obsolete, Krug purchased only a net of 57 units (68 purchased, 11 returned) through June 30, 1953. Beyond that date Krug made no purchases of any of these five models. On the other hand, Vim purchased 5,103 units of the same five models, all during the period June 25 to September 23, 1953 (three months) and purchased *no other* models from C/F or IT&T.

With respect to the plaintiffs' charge that Vim was favored by C/F or IT&T with advertising and promotional allowances, the Wiggin and Neaderhouser affidavits state that no advertising or promotional allowance or credit or any type of allowance for advertising or promotional purposes was given to Vim or to any retailer in Krug's territory. Vim's

answers to Krug's interrogatories disclose a similar denial in this regard. Wiggin deposes that Krug obtained an 8% advertising credit on the 57 units of the discontinued models which it purchased and retained. The negation of the making of such allowances by C/F or IT&T to Vim stands unrefuted by the affidavits in opposition to the motion.

We turn now to the ten pleaded issues hereinbefore stated:

(1) 57 units purchased by Krug were of the same model as the 5,103 purchased by Vim from C/F or IT&T, and therefore were of like grade and quality. This determination eliminates this pleaded issue.

(2) The prices charged to Vim on the five models above referred to were substantially the same as those charged to Krug; but, as a wholesaler, if Krug sold to retailers and Vim as a retailer sold directly to consumers, Vim would in actuality be receiving a substantial price advantage over Krug's customers.

(3) This issue must be answered in the affirmative because Vim and Krug's customers both sold to the ultimate consumer.

(4) Krug's customers, having paid more for the same models than did Vim, would have been at a disadvantage.

(5) The answer to this question is to be found in those numbered (2) and (4) ante.

(6) Krug's competitive capacity was adversely affected only with respect to the 57 units of these five television models which it purchased from C/F or IT&T.

(7) This question cannot be answered by the evidence presently before the Court but remains a matter for proof.

(8) The answer to this question is also a matter for proof.

(9) The burden of proof of the answers to these queries rests upon the moving defendant. That burden has not been discharged by the evidence submitted to the Court on this motion.

(10) The unqualifiedly negative answer to this inquiry has not been refuted by the affidavits submitted in opposition to the present motion, nor is it to be found in the answers to any of the interrogatories or in the admissions. Therefore, there is no genuine issue of fact respecting the second cause of action set forth in the amended and supplemental complaint, and movant is entitled to summary judgment upon that cause of action, as a matter of law. Accordingly, insofar as the second cause of action is concerned, the present motion must prevail.

As hereinabove indicated with respect to the pleaded issues, there remain, in this Court's opinion, several genuine issues of fact respecting the first cause of action set forth in the amended and supplemental complaint. That being so, the present motion for summary judgment upon that count must be denied.

In view of its long pendency, the case should proceed promptly to pretrial conference upon the issues remaining with respect to the first cause of action. If, as the Court is led to believe, the matters in difference between Vim and Krug with respect to the third cause of action have been compromised, an appropriate order of dismissal of that cause of action should be submitted and filed. If, on the other hand, the third cause of action still remains in issue between Krug and Vim, it should be brought on for pretrial conference simultaneously with the first cause of action.

An order may be submitted in conformity with the determinations hereinabove made.