AMERICAN FLETCHER NATIONAL BANK *v.* FLICK d/b/a MORRIS STREET AUTO SALES.

[No. 1167A89. Filed December 8, 1969. Rehearing denied January 7, 1970. Transfer denied April 7, 1970.]

*Cadick, Burns, Duck & Neighbours, Floyd W. Burns, Doug-las J. Hill,* all of Indianapolis, for appellant.

*Antcliff & Sargent, Clifford G. Antcliff*, of Greenwood, for appellee.

SULLIVAN, J.—Plaintiff-appellee, Norman Flick d/b/a Morris Street Auto Sales, instituted an action to recover $1,492 which sum the defendant-appellant bank had setoff against appellee's business checking account and also, by way of a second pleading paragraph, to recover $125,000 as damages for "grievous loss and damage to his credit, business standing, loss of income from his business, and great mental anxiety and suffering" and additional unspecified expense, all alleged to have resulted when checks drawn on that account were returned for insufficient funds. A counter-claim denominated as a cross-complaint for money had and received was filed by the bank in which it sought recovery of $858.

Trial was had by court which decided for appellee on all issues and entered a judgment for appellee as follows:

"1. The Court awards judgment to the Plaintiff and against the Defendant on Legal Paragraph I of Plaintiff's Complaint in the sum of One Thousand and Four Hundred and Ninety-two Dollars ($1,492.00) plus interest at the rate of six percent (6%) per annum since the 15th day of April, 1965.

"2. The Court awards judgment to the Plaintiff and against the Defendant on Legal Paragraph II of Plaintiff's Complaint in the sum of Eighteen Thousand Dollars ($18,000.00).

"3. The Court awards judgment to the Plaintiff and against the Defendant on its cross-complaint."[1]

## STATEMENT OF FACTS

The facts which were before the trial court are conflicting and confusing. In January, 1965, and prior to that time, Flick operated Morris Street Auto Sales and was engaged in the sale of used automobiles in Indianapolis under that

---

[1]. No error was alleged by appellant regarding the judgment of the trial court for plaintiff and against defendant on its cross-complaint.

name. One of the salesmen employed by Flick was Edward Henry. Flick owned a 1962 Mercedes automobile, and sometime prior to January 27, 1965, Henry made an offer to Flick to purchase it. That offer was declined. Flick had plans to go to Florida on vacation and made arrangements with Joseph Lyman to take the car to Chicago and sell it there "title attached" at the automobile auction. Flick testified that selling the car "title attached" meant that if Lyman sold the car he would bring Flick a check and if Flick accepted the check, he would staple the title to the check and both would have to clear the bank at the same time before the sale would be final. The record contains no other basis for defining the term "title attached."

After Flick had left for Florida, Lyman went to the Morris Street Auto lot to pick up the car, and while there, Henry asked him how he could trade for the auto. Lyman and Henry then reached agreement that the car would be sold to Henry in exchange for $1,500 and a trade of Henry's 1959 Mercedes.

Henry testified that he then told Lyman that he would finance the car at American Fletcher National Bank and that Lyman gave him the title to the auto. On this point, Lyman testified that he did not give the title to Henry. In any event, Henry went to the appellant's Arlington branch and made a loan application. The loan was for $2,350.00 plus financing charges, with $858 of that amount being used to pay the balance of Henry's loan on his previous auto, and the remainder, $1,492.00 representing the cash difference in the purchase. An installment loan note was signed by Henry and his wife.

A security agreement was signed by Henry which purported to give the bank a security interest in the 1962 Mercedes. Henry gave the 1962 Mercedes title, which had not been endorsed by the seller, Flick, to the Assistant Branch Manager at the time the loan application was made, and on the reverse side of the title the Assistant Branch Manager typed the name of Henry as purchaser and that of the bank as

lienholder. It is not clear what became of the title after the manager returned it to Henry. Lyman disavowed any knowledge of it and Flick testified that it was missing until he went out of business in 1966. Flick had, in the meantime, applied for and obtained a duplicate title, thereby gaining the means to later sell the auto. In any event, it is established that the Assistant Branch Manager returned the title to Henry and issued the bank's check for $1,492.00 payable to "Norman Flick and Edward L. Henry." Testimony showed that it is and was the policy of the bank's loan officers to place the names of the seller and buyer as payees on loan proceeds checks. It was also the policy of the bank's loan officers to affix on the back of such check the following words:

> "This check together with the down payment in cash and/or trade-in constitutes payment in full for _____ Serial No. _____ By indorsing, each Payee warrants and covenants that an application has been or promptly will be filed for a certificate of title to said property in the name of _____ subject to a lien in favor of AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY 10 EAST MARKET STREET INDIANAPOLIS, IND. 46204"

The Assistant Branch Manager neglected to affix these or any similar words to the back of the check which was given to Henry, who endorsed the check and gave it to Lyman. Needless to say, no application for certificate of title showing the bank's lien was filed.

Upon receipt of the $1,492.00 check from Henry, Lyman endorsed the check by signing Flick's name, added the endorsement of "Lyman Auto Sales, Joe Lyman" and deposited the check in his own account. Lyman talked to Flick by telephone that evening and told him of the sale, but Flick said that it was not enough money and instructed Lyman to tell Henry that he (Flick) didn't want the deal. Lyman also told Flick of the fact that Lyman had signed Flick's name to the $1,492 check and deposited it in Lyman's bank account. After his return from Florida Flick told Henry that he did

not feel that $1,500 and the trade was enough for the car and that he would like to have more. It was agreed between Lyman and Flick that Lyman would give Flick two cars as the equivalent of $1,492.

Henry, in Flick's presence, called the bank and asked for a "payoff" on the loan on the 1962 Mercedes. The bank's Assistant Branch Manager told Henry that since the bank still had title to Henry's old car, the bank would make a new loan for the difference between the payoff and $1,492, and, in effect, reinstate Henry's old loan on his old car. The loan was made and papers were prepared and signed by Henry and his wife. For reasons that are wholly undisclosed by the record and which are unfathomable by this court, the bank issued a check for $858 payable to "Edward L. Henry and Norman Flick." The Assistant Branch Manager neglected to put the bank's lien endorsement on the back of the $858 check. Flick testified that when Henry gave him the check Henry stated that he had borrowed the money from the bank and that it was a partial payment on a thousand dollars owed by Henry to Flick.

Flick also testified that Henry had borrowed another thousand dollars while Flick was in Florida and that during the conversation with Henry, Flick stated that fact and said that he would deduct that $1,000 debt from the $1,492. He said that he gave the $492 balance to Henry. Henry denied that he received $492 or any other sum from Flick during this conversation or that there had been any discussion of the thousand dollar debt at that time.

Several months after the $858 check was issued, an officer of the bank called Flick and asked if he would pay the bank the $1,492 represented by the check issued to Henry and him. Flick declined to do so and the following day, April 15, 1965, the bank's officer again called and told Flick that his account with the bank would be charged with $1,492 and that Flick should make arrangements to cover any checks that were outstanding. Flick replied that he was not sure whether

he could cover them. The bank's officer thereupon invited Flick to make application for a loan to cover outstanding checks and Flick refused. On April 15, 1965, Flick's Morris Street Auto Sales account was charged with the sum of $1,492 representing the first check that had been issued to Henry and Flick.

Following this setoff, Flick's business checking account balance was insufficient to pay all the checks which were then outstanding and as a result three checks were returned for insufficient funds. One was for $251.84 payable to a customer of Flick's for whom he sold a car on consignment; another was to Fidelity Finance Co. for $139.45; and the third was to Ashland Finance Co. for $442.13.

Flick testified that Fidelity Finance Co. is a finance company to whom he sold conditional sales contracts from time to time and with whom he did small loan business. He further testified that he accepted payments from customers for Fidelity. He said that he dealt with Ashland Finance in the same manner as Fidelity.

The bank contends that the judgment of the trial court should be reversed because: (1) The setoff was proper and that therefore dishonor of Flick's checks was not wrongful. (2) Even if the dishonor was wrongful, the plaintiff did not prove that such dishonor was the proximate cause of the $18,000 damages awarded by judgment on paragraph two of the complaint. (3) Said $18,000 award was excessive. (4) The trial court erred in admitting certain evidence.

There is a striking lack of direct primary authority in Indiana on any of the issues to be herein determined. The cause, therefore, is in essence one of first impression in this jurisdiction.

## THE BANK'S SETOFF AND DISHONOR OF THE CHECKS WAS WRONGFUL

It is settled that when a depositor becomes indebted to it, a bank has the right to charge the deposit with a sufficient

amount to pay the debt due. *Teeters* v. *City National Bank of Auburn* (1938), 214 Ind. 498, 14 N. E. 2d 1004. The bank contends that Flick was indebted to it by reason of a duty to return to the bank $1,492 representing the amount of the check first issued payable to Flick and Henry, and that Flick cannot avoid the indebtedness since he received and retained the cash or its equivalent. The bank also argues that Flick had a legal duty to return the money, under two theories of the law of money had and received. First, a debt for money had and received was created inasmuch as the bank's security agreement failed because Flick refused to sign over the title to the automobile to Henry and did so while chargeable with the knowledge that his act would cause a failure, in part, of the consideration upon which the bank was relying.[2] Second, a debt for money had and

---

2. It is interesting to note that appellant quotes from 19 I.L.E., Money Lent, Paid or Received, § 3, in support of its allegation that Flick's actions caused in part a failure of the consideration upon which the bank was relying, i.e., its security interest in the automobile.

That quoted portion reads, in part, as follows:

"The action (for money had and received) will lie where one has obtained money from another through the medium of oppression, imposition, extortion, or deceit, or by mistake of fact, or without consideration, or on a consideration that has failed, *unless the failure of consideration is shown to be attributable to some fault on the part of plaintiff himself.*" (Emphasis supplied)

Yet the alleged failure of the bank's purported security interest (which the bank equates with part of the consideration upon which it relied in making the loan to Henry) could have been prevented by the precautions that were normally taken by the bank. As was pointed out in *Champa* v. *Consolidated Finance Corp.* (1953), 231 Ind. 580, 591, 110 N. E. 2d 289:

"* * * there are statutory provisions in Indiana which pertain especially to security interests in automobiles. Acts 1945, ch. 304, § 11, being Burns Stat., § 47-2501, provides for the issuance of a certificate of title upon application which shall contain a statement of any liens or encumbrances thereon. 'The certificate of title shall be delivered to the owner (as defined in § 47-2402(o)) in the event no lien or encumbrance appears thereon. Otherwise the certificate of title shall be delivered to the person named to receive the same in the application for such certificate. * * *

"It has been said this law was enacted for the protection of the owner of motor vehicles, of those holding liens thereon, and of the public. *Guaranty Discount Corp.* v. *Bowers* (1932), 94 Ind. App. 373, 158 N. E. 231; *Nichols* v. *Bogda Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905 * * *

received is, and was here, created where one such as Flick receives money from another for a particular purpose and neglects or refuses to apply it to such purpose.

We must reject these arguments because they presuppose Flick's retention of money, which in good conscience, should have been payed to the bank. The nature of an action for money had and received was well stated by the Indiana Supreme Court in *Indiana Business College* v. *Cline* (1918), 187 Ind. 416, 418, 119 N. E. 712. The court there stated:

> "* * * Though an action at law, it is equitable in its nature, and it can be maintained in all cases where the defendant holds money of the plaintiff which in equity and good conscience he ought to repay. In such cases no express promise to pay need be proved because the law will imply a debt from such relation between the parties and will give this action, founded on the equity of the plaintiff's case. * * * [T]he action lies to recover back money which ought not to be kept; for money which *ex equo et bono* the defendant ought to return; for money which the defendant upon the circumstances of the case and by the ties of natural justice is under obligation to refund * * *"

Thus, fundamental to the success of an action based upon the theory of money had and received is the fact that the defendant holds money to which the plaintiff in equity and good conscience has a claim. In this case when the deal fell through, Flick had the duty to return $1,492 or its equivalent *to Henry,* not the bank. See *Hammond Pure Ice & Coal Co.* v. *Heitman* (1943), 221 Ind. 352, 47 N. E. 2d 309; *Teeters* v. *City National Bank of Auburn* (1938), 214 Ind. 498, 14 N. E. 2d 1004. In finding for Flick the trial

---

"It is common knowledge that bankers and finance companies generally retain possession of the certificate of title upon which their interest in the vehicle is shown. They do so, of course, to avail themselves of the protection afforded them by the terms of the statute * * *"

When these considerations are combined with the primary reasons for rejecting the bank's money had and received arguments (discussed later in the opinion), the argument here footnoted is left particularly unappealing.

court must necessarily have determined that he returned the $1,492.00 or its equivalent to Henry by applying $1,000 to a debt of Henry's and by returning $492.00 in cash. As long as there is some evidence supporting such determination we cannot substitute our judgment or conclusions for those of the trier of fact. *Indiana University* v. *Williams* (1969), 252 Ind. 624, 251 N. E. 2d 439. Therefore, Flick satisfied his equitable obligation by returning the money or its equivalent to Henry.

We must here state that while the testimony of Flick and of Lyman, particularly concerning the handling of the automobile certificate of title and of the bank's security interest therein, is in many respects virtually unbelievable and to us highly improbable, we cannot say, as a matter of law, that the trial court could not place credibility in said testimony. *National Life & Accident Insurance Co.* v. *Neuhoff* (1967), 140 Ind. App. 603, 224 N. E. 2d 690. The trial court had the opportunity to observe the demeanor of the witnesses and to place their individual testimony within the framework of the entire case. It is well settled that this court cannot weigh the evidence nor assess the relative credibilities of individual witnesses. As stated in *Indiana University* v. *Williams, supra,* at p. 442,

> "* * * Where, as here, the evidence is in conflict this Court will not determine either the weight of the evidence or the credibility of the witnesses. (citations omitted) We will not substitute our judgment or conclusions for those of the trier of fact. (citation omitted) Rather, we will only consider that evidence which tends to support the judgment of the trial court together with all reasonable and logical inferences which may be drawn therefrom. (citations omitted)."

For this reason and this reason alone, we consider only that evidence most favorable to appellee Flick. Since Flick testified that he discharged his duty to Henry by applying $1,000.00 to a debt of Henry's and by returning $492.00 in cash, we are bound upon appeal to accept that testimony.

## WRONGFUL DISHONOR AS PROXIMATE CAUSE
## OF DAMAGE

Indiana Annotated Statutes § 19-4-402 (Burns Repl. 1964), which is germane to the problem presented by this case provides:

> "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case."

One difficulty in applying the statutory limitation is that the concept of proximate cause is traditionally applicable to "loss" or "injury" or "harm," see *Swanson* v. *Slagal, Administratrix* (1937), 212 Ind. 394, 8 N. E. 2d 993; *Tabor* v. *Continental Banking Company* (1941), 110 Ind. App. 633, 38 N. E. 2d 257; Restatement, *Torts* (2nd edition 1966), §§ 430-431; 38 Am. Jur., *Negligence,* § 63, p. 715, as opposed to "damages"[3] in the sense of money received for a compensable "loss," "injury" or "harm." See *City of North Vernon* v. *Voegler* (1885), 103 Ind. 314, 2 N. E. 821.

Additionally, the second sentence of the statute creates confusion as to whether "actual damages" include or are separate and distinct from "consequential damages," as the latter term is contained in said statute. Suffice it to say, that insofar as the facts before us require construction of Burns § 19-4-402, we construe it to permit recovery of monetary compensation for *any* actual or consequential harm, loss or injury proximately caused by a wrongful dishonor. See *Loucks* v. *Albuquerque National Bank*

---

3. Damages have been defined as a sum of money to be paid for an injury or loss. *Hege* v. *Newsom* (1933), 97 Ind. App. 465, 170 N. E. 336.

(1966), 76 N. M. 735, 418 P. 2d 191. We believe in this respect that labels such as "actual" or "consequential" are less than meaningful in the sense of the compensability of harm, injury or loss proximately caused by wrongful dishonor.

We are here faced with two questions. First, how much evidence is sufficient to allow reasonable men to differ as to whether a particular loss, injury, or harm was proximately caused by a wrongful dishonor? Second, once a particular harm is deemed compensable (proximately caused) how much evidence is sufficient to establish the amount of money which should be awarded for such harm? It must be kept in mind that both questions primarily involve determinations of fact according to the evidence adduced in the particular case. As a matter of law, however, certain minimum standards must be met before the questions of fact may be considered.

## DAMAGE TO CREDIT AND BUSINESS STANDING IS PRESUMED

As to the first question posed, we hold that when a bank wrongfully dishonors its customer's business check there arises a presumption that the customer's credit and business standing is thereby harmed. The function of this presumption is to remove from the customer the duty of going forward with the evidence on this particular injury or harm and thereby avoid a directed verdict against him if evidence on the issue is not produced. The primary reason for the recognition of this presumption is that a wrongful dishonor renders the existence of *some* harm to the customer's credit and business standing so probable that it makes legal sense as well as common sense to assume the existence of such harm unless and until the adversary comes forward with some evidence to the contrary. Although we are not prepared to go as far as did the Pennsylvania court in *Weiner* v. *North Penn Bank* (1916), 65 Pa. Super Ct. 290, the following statement from that opinion is a recognition of the high probability of such harm:

"In the modern world the financial credit of a man, particularly of one engaged in commercial pursuits, is a much prized and valuable asset. Although laboriously built it is easily destroyed. The banks of the country, through which the great volume of our commercial business is transacted, have a deserved reputation for accuracy and care in the conduct of their affairs. Hence when a check of a depositor is refused at the counter of his bank, that portion of the commercial world, greater or less, that comes within the sphere of his transactions, promptly imputes the blame to him rather than to the bank. * * *"

Of the same tenor is *Schaffner* v. *Ehrman* (1891), 37 Ill. App. 340, 28 N. E. 917, 919, as follows:

"* * * To return a check marked 'Refused for want of funds' to the holder, especially through a clearing-house, certainly tends to bring the drawer of that check into disrepute as a person engaged in mercantile business; and it needs no argument to show that a single refusal of that kind might often, and frequently does, bring ruin upon a business man * * *"

The rationale of the cases above-quoted, however, does not hold true as to such other "consequential" losses or injuries as may be conceivably sustained as a proximate result of wrongful dishonor. Additional harms, injuries or losses, such as those alleged by Flick, are susceptible of evidentiary proof, both as to their actual existence and as to their extent. Flick here has failed to bring forth sufficient evidence to show that loss of income or other expense, harm or injury, if any, was proximately caused by the wrongful dishonor. He, therefore, cannot recover for such alleged loss, expense, harm or injury. He is, as to paragraph two of his complaint, restricted to recovery for the harm to his credit and business standing, which harm is established by way of the unrebutted presumption heretofore discussed.

## DAMAGES

Having found only the harm to credit and business standing compensable in this case the question which remains is

whether there was sufficient evidence to justify any more than nominal damages. We think not and therefore plaintiff may only recover nominal damages upon paragraph two of his complaint.

The law presumes that at least nominal damages result from a harm. *Hall* v. *Delphi-Deer Creek Township School Corp.* (1934), 98 Ind. App. 409, 189 N. E. 527; *Ladoga Canning Co.* v. *Corydon Canning Co.* (1912), 52 Ind. App. 23, 98 N. E. 849. Therefore, plaintiff is entitled to at least nominal damages for the harm to his credit and business standing. We are not unmindful that there must be drawn a clear distinction between the measure of proof necessary to establish the fact that the plaintiff sustained some harm and the measure of proof necessary to enable the trier of fact to fix the amount to compensate for such harm. And we do not preclude recovery for other than nominal damages on paragraph two merely because plaintiff is unable to fix the exact amount. We recognize that the amount of damages appropriate for harm to credit and business standing is difficult to prove. When it is found that a harm has been caused and the only uncertainty is as to the dollar value of the harm, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever. *Wakeman* v. *Wheeler & Wilson Mfg. Co.* (1886), 101 N. Y. 205, 4 N. E. 264; 11 Williston on Contracts (3rd ed., 1968), § 1345. However, there must be some evidence on which to base an award of *substantial* damages. *Brauns* v. *Glesige* (1892), 130 Ind. 167, 29 N. E. 1061.

In *Loucks* v. *Albuquerque National Bank, supra,* there was evidence that ten checks were dishonored; that one parts dealer thereafter refused to accept a partnership check, and that Mr. Loucks was required to go to the bank, cash the check, then take the cash to the parts dealer. There was further evidence that some persons who had previously accepted the partnership checks now refused to accept them; that other places of business denied the partnership credit

after the dishonors; and that a salesman, who had sold the partnership a map and for which he was paid by one of the dishonored checks, came to the partnership's place of business, and ripped the map off the wall because he had been given "a bad check for it." The New Mexico court held this evidence sufficient to raise a question of fact to be determined by the jury as to whether the partnership's credit had been substantially damaged as a proximate result of the dishonors.

In our case, Flick completely failed to present any evidence that the wrongful dishonor proximately caused the substantial damages which were alleged. The evidence is undisputed that shortly after April 15, 1965, the bank returned three of Flick's checks because of insufficient funds in Flick's account. It is also undisputed that some time after April 15, 1965, Flick's business at Morris Street Auto Sales declined, he sold fewer autos, his income declined, he eventually began to lose money, and that his used car lot was closed in the fall of 1966. There is nothing in the record, however, linking these undisputed facts with the dishonor of the checks. There is nothing in the record which indicates that anyone other than the payees on the checks and Flick had knowledge of the dishonored checks or *could* have had any knowledge of said checks. There is nothing in the record to indicate that the checks caused any action or inaction by any other party. To the contrary, there is affirmative evidence in the record indicating that there were reasons other than the dishonor for the decline of Flick's business. We hold that appellee Flick is entitled to recover only nominal damages upon paragraph two of his complaint.

By reason of the result herein reached, appellant's allegation relative to improperly admitted evidence becomes inconsequential because said evidence relates solely to the amount of damages recoverable by appellee Flick.

For the reasons stated, we affirm the judgment of the trial court for plaintiff and against defendant on Legal Paragraph I of plaintiff's complaint in the sum of one thousand four

hundred and ninety-two dollars ($1,492.00), plus interest at the rate of six percent (6%) per annum since the 15th day of April, 1965. We reverse the judgment of the trial court on Legal Paragraph II of plaintiff's complaint and remand for entry of judgment on Legal Paragraph II not inconsistent with this opinion.

Costs are hereby assessed against appellee.

Lowdermilk, P.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 839.