**FIRST NATIONAL BANK OF NEW CASTLE, Indiana, Appellant (Plaintiff Below),**

v.

**Howard ACRA and Phyllis Acra, Appellees (Defendants Below).**

No. 1–883A265.

Court of Appeals of Indiana, First District.

May 10, 1984.

Rehearing Denied June 20, 1984.

Jerry P. Belknap, James E. Mahoney, Barnes & Thornburg, Indianapolis, R. Scott Hayes, Scotten & Hinshaw, New Castle, for appellant.

Peter Campbell King, Patrick W. Harrison, Cline, King, Beck, Harrison & Runnels, Columbus, for appellees.

ROBERTSON, Judge.

The First National Bank of New Castle, Indiana (bank) appeals the verdict awarding Howard Acra (Acra) $100,000 of compensatory damages and $100,000 of punitive damages in his counterclaim against the bank. The bank initiated this action against Acra and Phyllis Acra (Phyllis) to collect on a note. Phyllis's motion for judgment on the evidence was granted during the course of the trial.

We affirm in part, reverse in part, and remand.

The facts reveal Acra and Phyllis executed two promissory notes in connection with their business, Agritron of Indiana, in the spring of 1975.[1] The bank renewed the notes in May, 1976, by consolidating the notes into a single debt which was due in ninety days. With this renewal, Acra and Phyllis gave the bank a secured interest in the equipment, inventory, and accounts receivable of Agritron. The bank continued to renew the note at six month intervals until June 20, 1980, when a note for $23,-089.42, which was due December 19, 1980, with $1,642.09 of interest, was executed. Acra signed another renewal note on December 18, 1980, and Phyllis signed it on December 30, 1980. The interest on the June renewal was not paid.

During this time period, Acra was forced to relocate his business because the State of Indiana had condemned his land in connection with a highway construction project. He received relocation expenses and the appraised value of the property in 1979. These funds were used to purchase property for his business in Adams, Indiana. Acra received $300,000 from the State in his condemnation suit on March 11, 1981.

Acra's financial dealings were not limited to one bank. He owed the Union Bank and Trust Company of Greensburg approxi-

---

1. Acra and Phyllis were married when the notes were signed. They have subsequently divorced.

mately $55,000 and had a line of credit of $110,000. He maintained his personal checking account with the Decatur County Bank.

On March 12, 1981, a loan officer with Union Bank and Trust telephoned Bruce Koger, a vice-president at the bank, to inquire about the collateral which secured Acra's loan with the bank. Koger learned Acra had received his condemnation award from the State. Acra deposited in excess of $10,000 with the bank between March 17, 1981, and March 23, 1981. He also wrote a check on this account to Union Bank and Trust for $5,000. Early in the week of March 23, 1981, the same loan officer of Union Bank and Trust contacted Koger again to inquire if Acra had sufficient funds in the account to cover the check. Koger informed the officer that Acra lacked sufficient funds, even though Acra's account easily exceeded $5,000.

Pursuant to the bank's request, Acra met with Koger on March 25, 1981, to discuss his note. Acra offered Koger a $5,000 check from his personal account with the Decatur County Bank to pay for principle and interest. Koger asked if Acra could pay more, but he responded that he could not because his business needed operating cash. Koger left Acra and conferred with someone about the $5,000 payment. Upon returning, Koger informed Acra the bank would work with him for another six months, but that it wanted him to get the loan transferred to another bank because he now lived in Greensburg. Koger declined the $5,000 payment. Koger had made similar statements to Acra in January and February about the bank's willingness to work with him. Acra deposited the check into his account at the bank.

Later that afternoon, Koger put a "hold" on Acra's checking account. The hold, according to the bank's evidence, did not freeze the account, but rather, it allowed Koger to monitor Acra's account as checks went through the account. Another employee of the bank testified that a hold freezes the account. On March 27, 1981, the loan officer from Union Bank and Trust informed Acra that the $5,000 check he had given it would not clear. Acra telephoned Koger to determine the nature of this difficulty because his account had more than $11,000. Koger informed Acra that his account was fine. Acra had also written some checks on March 26, 1981.

It appears that Koger ordered the hold on Acra's account because the bank wanted a $5,000 payment and the payment of interest. Acra was supposed to call Koger on March 26th to discuss this. Acra did not call on March 26th, but he called Koger in the afternoon after their morning meeting on March 25th. Prior to opening on Monday, March 30, 1980, Koger ordered a set-off of Acra's account.[2] Acra's account had in excess of $10,000 at this time.

Acra presented evidence that he sustained a loss of his line of credit, that he was personally humiliated and subject to undue stress because of the bank's activity, and that some creditors foreclosed on his business property. Acra supported his claim for emotional damages by the testimony of a psychiatric expert who was not Acra's treating physician.

The bank argues the verdict is contrary to law because it was merely exercising its right to a set-off. The bank contends it did not waive its right to a set-off and also alleges its statements were statements of future intent, and thus, not actionable. Acra contends the evidence supports the judgment as the jury was instructed because there was sufficient evidence for the jury to find the bank exercised the set-off in bad faith. Acra argues the statements made by the bank were fraudulent.

---

**2.** The bank states in its brief that all checks which it received prior to March 30, 1981, were honored. This statement is misleading because the bank was closed on the weekend prior to March 30, 1981. No checks written after March 27, 1981, were honored. Another check written on March 27, 1981, was initially returned for lack of funds but was honored on March 31, 1981.

 The essential elements of actual fraud are a material representation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying upon it. *Baker v. American States Ins. Co.*, (1981) Ind.App., 428 N.E.2d 1342. Fraud cannot be predicated upon acts which by law a party has a right by law to do, nor upon the nonperformance of acts which by law he is not bound to do. *Colonial National Bank v. Bredenkamp*, (1972) 151 Ind.App. 366, 279 N.E.2d 845. The bank argues the evidence is insufficient to support Acra's judgment.

 Our standard of review on sufficiency issues is well known. This court will not reweigh the evidence or assess the credibility of witnesses, but will examine only that evidence most favorable to the judgment and all reasonable inferences to be drawn therefrom. The jury's verdict will be set aside only where there is a total lack of evidence or where it is contrary to uncontradicted evidence. *Trinity Lutheran Church v. Miller*, (1983) Ind.App., 451 N.E.2d 1099. It is with this standard that the bank's appeal must be judged.

The bank argues the verdict is contrary to law because the statements made by its officer, Koger, were statements of future intent and therefore, a finding of fraud was improper since fraud requires a statement of past or existing fact. The statements in question were that the bank would work with Acra for six more months and that his account was fine. Before evaluating the nature of these statements, it is necessary to examine the instructions which were read to the jury.

 The trial court instructed the jury that a bank could setoff an account if the bank acts in good faith. No objection was made to the instruction. Once the instruction is given to the jury it becomes the law of the case when no objection is made. The question of whether the evidence is sufficient to sustain the verdict on this theory must be evaluated upon the basis of the law as set out in the instructions. *Bd. of*

*Com'rs. of Monroe Cty. v. Hatton*, (1981) Ind.App., 427 N.E.2d 696. Thus, the verdict must be upheld if the evidence would support a finding that the bank did not act in good faith.

 The record supports Acra's claim for fraud and supports the inference that the bank did not act in good faith. Koger assured Acra that his account was fine on March 25th and 27th even though the bank had placed a hold on his account on the 27th and it refused to honor a check earlier that week when there were sufficient funds to cover it. The jury could have logically inferred that the bank had begun the process of freezing his account since Koger testified that he intended to have Acra's account seized on March 25th if Acra did not contact him the next day. Acra telephoned in the afternoon of March 25th and then on the 27th. Koger told Acra both times his account was fine. Although *Colonial National Bank v. Bredenkamp, supra* states that a promise to obtain a loan in the future is not a statement of past or existing fact, the court also examined the past dealings of the parties to determine if the statements were fraudulent. We believe the present case is analogous to the analysis of *Colonial* and that the bank's statements constituted statements of past or existing facts. Acra had worked with the bank since 1975 and it had extended his loans many times previously. The bank's statement that it would work with Acra for six more months had been made in January and February as well as when the bank refused the $5,000 check Acra offered. The jury could have easily inferred the bank's statement to mean that it would continue to work with Acra for six months. Deception and reliance involve the victim's state of mind, and as such, their existence or absence is a question for the trier of fact. *Plumley v. Stanelle*, (1974) 160 Ind.App. 271, 311 N.E.2d 626.

The bank argues the verdict is also contrary to law because it was merely exercising its right to a set-off and a finding of fraud cannot be predicated upon an action that a party has a legal right to exercise.

It cites *Van Bibber v. Norris,* (1981) Ind., 419 N.E.2d 115, for the proposition that the acceptance of late payments cannot constitute an implied waiver if the agreement has a non-waiver or no modification provision. In the present case, the loan agreements authorized set-offs under certain circumstances and provided that any waiver of the bank's rights must be in writing. Since there was no written waiver of the bank's right to set-off, it contends it acted within its legal rights.

 Acra argues that this issue must be judged pursuant to the instructions and it is the law of the case. *Bd. of Com'rs. of Monroe Cty. v. Hatton, supra.* However, the law of the case does not amount to waiver of the right to appeal an erroneous ruling on a motion for judgment on the evidence. *Id.* The bank moved for a directed verdict against Acra's counterclaim, which the trial court denied and later moved for a judgment on the evidence, which was also denied.

 The *Van Bibber* decision is distinguishable from the present case because it involved a determination of whether the continued acceptance of late payments constituted a waiver of timely payments. The supreme court held that the contract's non-waiver clause precluded a finding that the secured party waived its right to strict compliance with the agreement's terms. In the instant case, we are not presented with just a non-waiver clause and continued acceptance of late payments. Koger told Acra that the bank would work with him for six more months. Thus, the issue involves subsequent oral statements which contradicted the bank's right to a set-off. A contract providing that any modification thereof must be in writing may nevertheless be modified orally. *Foltz v. Evans,* (1943) 113 Ind.App. 596, 49 N.E.2d 358, *Oxford Devlp. Corp., et al v. Rausauer Bldrs., et al,* (1973) 158 Ind.App. 622, 304 N.E.2d 211. The jury could have easily inferred from the bank's statement that it would not exercise its right of set-off. Moreover, Acra's claim is founded upon fraud. As a general premise, we fail to see

how a non-waiver clause would vitiate a subsequent fraudulent statement. The trial court did not err by denying the bank's motions.

The bank argues a finding of fraud was contrary to law because it alleges Acra did not prove injury resulting from reliance, an essential element of fraud. In raising this argument, the bank presumes its statement that it would work with Acra was a statement of future intent. This issue has already been resolved against the bank. The jury could have easily concluded that Acra relied on this statement in writing checks which were later dishonored because the bank froze Acra's account. The bank also contends that its statement assuring Acra his account was fine were not actionable, because it alleges no harm resulted. The bank alleges the statement was true at the time since the bank had merely placed a hold on Acra's account which it claims it did not freeze the account and Acra told Union Bank to resubmit his check which had been dishonored previously on March 23rd. The bank alleges no harm resulted because Union Bank did not resubmit the check until the next business day, Monday, March 30th when the account was frozen. The record discloses that the bank refused to honor a $5,000 check given to Union Bank on March 23rd. Acra contacted the bank on March 25th and March 27th. Both times he was told his account was fine, even though the bank had dishonored his check and it had placed a hold on his account. There was also evidence to support the inference that the bank had begun the process of freezing Acra's account, in that Koger admitted he intended to seize the account if Acra did not telephone him on March 26th. There was sufficient evidence for the jury to conclude that the bank had misrepresented the status of Acra's account, that Acra wrote $3,000 to $4,000 of checks based upon the statement of March 27th, and that these checks were later dishonored.

The jury awarded Acra $100,000 in compensatory damages. The bank alleges the award is excessive and not supported by

sufficient evidence. Acra contends the award represents his financial losses as well as emotional distress which resulted from the bank's fraud.

The bank argues an award for emotional distress is contrary to law because there was no physical impact suffered by Acra. It is well recognized that Indiana adheres to the general rule that damages for emotional distress are recoverable only when accompanied by and resulting from physical injury. *Little v. Williamson*, (1982) Ind.App., 441 N.E.2d 974. An exception to this general rule has arisen in certain cases of intentional infliction of mental distress. In *Charlie Stuart Oldsmobile, Inc. v. Smith*, (1976) 171 Ind.App. 315, 357 N.E.2d 247, *modified upon rehearing*, (1977) 175 Ind.App. 1, 369 N.E.2d 947, *trans. denied*, this court made the following observation regarding the exception to the impact rule:

> The Indiana cases are consistent with most other jurisdictions which allow recovery for mental anguish as an element of compensatory damages in an action for injury to personal property only if the act occasioning the injury was inspired by *fraud*, malice, or like motives, involving intentional conduct. (Emphasis added).

171 Ind.App. 328, 357 N.E.2d 247.

In *Baker v. American States Ins. Co.*, *supra*, this court reversed the granting of a motion to dismiss in a case where an insurance company allegedly misrepresented the impairment rating of an injury in a workmen's compensation claim. The plaintiff sought damages for emotional distress. We stated:

> The tort of fraud, if proven, would clearly constitute an invasion of a legal right. Furthermore, the question of whether this kind of intentional invasion of a legal right is likely to cause an emotional disturbance is for the trier of fact.

428 N.E.2d 1342.

The bank argues *Baker* is inapplicable to the present case because the underlying fraud in *Baker* related to a physical injury and there is no physical injury in the present case. The above quotes from *Baker* and *Charlie Stuart Oldsmobile* obviously resolve this argument against the bank. There is no requirement for physical injury to accompany fraud in order to recover for emotional distress. The trial court correctly submitted this issue to the jury.

The bank alleges the trial court erred by allowing the testimony of Acra's expert witness, Dr. Hanus Grosz. He gave expert psychiatric testimony by the use of videotaped deposition that the events led to deterioration of Acra's mental health, physical health, and emotional health. Dr. Grosz did not treat Acra and relied upon statements which were made by Acra as well as independent tests and objective evidence. The deposition was offered out of sequence and the bank objected to its admission because of a lack of foundation. The trial court conditioned its admission on the requirement that Acra would later establish the relevancy and materiality of the deposition.

On appeal, the bank argues the admission of this testimony contradicts the ruling of *Briney v. Williams*, (1968) 143 Ind. App. 691, 242 N.E.2d 132. This case held the opinion of a physician or surgeon based wholly or partly on statements and subjective symptoms related to the physician by the patient is inadmissible where the examination was made for the purpose of qualifying the physician to testify as a medical expert. The bank asserts the testimony was inadmissible and a new trial should result.

■■■ The bank has failed to preserve this issue because it failed to raise a specific and timely objection to the deposition's admission.[3] To predicate error on the admission of testimony, it is necessary that the timely and specific objection be made in the trial court. *Trinity Lutheran Church*,

---

3. The bank argues its objection for a lack of foundation preserves this issue since foundation includes the introduction of sufficient facts upon which the expert can base his opinion.

Our review of the record leads to the unequivocal conclusion that the bank's objection was to the temporal sequence of the admission and not to the substance of the deposition.

*Inc. of Evansville, Ind. v. Miller, supra.* Moreover, a far more enlightened rule regarding the admissibility of psychiatric expert testimony has evolved since *Briney.* In *Morella v. Brown,* (1983) Fla.App., 425 So.2d 123, the District Court of Appeal of Florida rejected the rule that the testimony of treating physicians is admissible but testimony of examining physicians is inadmissible in regards to mental health practitioners. The rule was rejected for the following reasons:

> Since mental dysfunctions are neither visible nor palpable, the only way in which a psychiatrist can conduct such an examination is to listen to and, in the light of the doctor's expertise, critically evaluate what the patient says is disturbing him. To hold that because this process sounds very much like giving an ordinary "history" which, under the law, cannot form the basis of an examiner's opinion concerning the extent of injury even though no other process is possible in the context of the psychiatrist's work is impermissibly to allow the verbal form of a legal construct to control over the realities of the particular situation.

425 So.2d 125.

The opinion also noted that no court which has directly faced this issue has ruled otherwise. There is no reason not to use this approach. There was no error in admitting the deposition.

The bank argues the award of $100,000 in compensatory damages is excessive. It alleges the award cannot be substantiated because Acra submitted evidence of his loss of gross sales and not losses of his profits. The bank correctly asserts that compensation should be based upon lost profit and not lost sales. *Jerry Alderman Ford Sales, Inc. v. Bailey,* (1972) 154 Ind. App. 632, 291 N.E.2d 92. It argues there is no evidence of lost net profit and Acra's evidence of lost sales would not support the damage award.

The jury returned a general verdict of $100,000 in compensatory damages which included damages such as Acra's loss of credit, his damages to his reputation, subsequent loss of property due to foreclosure, and mental distress. There was testimony that the dishonor of the $5,000 check payable to the Union Bank led it to rescind the remaining $60,000 on his line of credit.[4] Moreover, when a bank wrongfully dishonors a customer's business check, there arises a presumption that the customer's credit and business standing is thereby harmed. *American Fletcher Nat'l. Bank v. Flick,* (1969) 146 Ind.App. 122, 252 N.E.2d 839. The opinion stated:

> We recognize that the amount of damages appropriate for harm to credit and business standing is difficult to prove. When it is found that a harm has been caused and the only uncertainty is as to the dollar value of the harm, there can rarely be good reason for refusing on account of such uncertainty, any damages whatever. However, there must be some evidence on which to base an award of *substantial* damages. (Citations omitted).

146 Ind.App. 135, 252 N.E.2d 839.

It is also well established that the jury's verdict will be set aside only where there is a total lack of evidence or where it is contrary to uncontradicted evidence. *Trinity Lutheran Church, Inc. of Evansville, Ind. v. Miller, supra.* Acra presented evidence that he lost his line of credit, that he suffered emotional distress, that he was forced to mortgage property in order to obtain additional credit, and there is a presumption that a dishonored business check harms the drawer's credit and business reputation. Although the gross sales figures submitted by Acra would not be sufficient to sustain the judgment, we conclude there is evidence to support the verdict.

---

4. The bank argues the evidence establishes that Union Bank and Trust was not going to renew Acra's loan. This argument is an appeal to reweigh the evidence. On sufficiency claims, we review the evidence most favorable to the appellee. There was testimony that the dishonor of the check was "the straw that broke the camel's back."

The jury also awarded punitive damages of $100,000. The bank submitted an instruction which utilized a preponderance of the evidence standard rather than the standard of clear and convincing evidence as set forth in *Travelers Indemnity Co. v. Armstrong*, (1982) Ind., 442 N.E.2d 349. The trial court tendered the bank's instruction to the jury. The bank argues the evidence is not sufficient to support the clear and convincing evidence standard or in the alternative, it is entitled to a new trial pursuant to the standard elaborated upon in *Travelers*. Acra argues the *Travelers* standard is applicable only in contract actions and this action was in tort. He also argues that whatever error may have occurred was invited because the trial court utilized the bank's instruction.

The bank contends if it committed any error in submitting the wrong standard it was excusable neglect because *Travelers* was a very recent case at the time of the trial. *Travelers* was issued in December, 1982, and this action was tried in March, 1983. The *Travelers* opinion was contained in advance sheets two months prior to trial. We remain unpersuaded that a three month interim in the distribution of the opinion constitutes excusable neglect. A party cannot complain of error in an instruction if he has tendered to the court an instruction containing the same or similar terminology. *Dominguez v. Gallmeyer*, (1980) Ind.App., 402 N.E.2d 1295.

The final issue the bank raises is whether the trial court erred in granting Phyllis Acra's motion for judgment on the evidence. Phyllis signed a renewal note on December 30, 1980. The bank alleges that its notes were not renewed until the interest due was paid. The renewal note was for the same amount as the prior note, thus indicating the interest was not being included in the renewal note. The trial court granted her motion for judgment on the evidence because she had signed the renewal note and was no longer liable on the note sued upon.

A motion for judgment on the evidence may be properly granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof. *Eagle Motor Lines, Inc. v. Galloway*, (1981) Ind.App., 426 N.E.2d 1322. The bank alleged the renewal note could not be effective until past interest was paid. We cannot conclude that there was no substantial evidence or reasonable inference to support its theory. The trial court erred in granting Phyllis's motion.

The judgment is affirmed in part, reversed in part, and remanded for proceedings not inconsistent with this opinion.

NEAL, P.J., and YOUNG, J. (sitting by designation), concur.