Henry KRUG, Sylvia Krug, Norman Krug and Adele Krug, Sole Surviving Directors, as Trustees in Dissolution of Krug Distributors, Inc., Plaintiffs,

v.

INTERNATIONAL TELEPHONE & TELEGRAPH CORPORATION, Vim Electric Co., Inc. and Vim Television and Appliance Stores, Inc., Defendants.

Civ. A. No. 488.

United States District Court
D. New Jersey.

June 20, 1956.

David Weinick, Newark, N. J., Arnold Malkan, New York City, of counsel, for plaintiffs.

Green & Yanoff, H. Kermit Green, Newark, N. J., Laporte & Myers, New York City, of counsel, for defendant International Telephone & Telegraph Corp.

Jerome L. Kessler, Newark, N. J., for defendants Vim Electric Co., Inc. and Vim Television & Appliance Stores, Inc.

WORTENDYKE, District Judge.

The second amended complaint in this action seeks treble damages for alleged violations of Sections 2(a), 2(d) and 2(f) of the Robinson-Patman Act, 15 U.S.C.A. §§ 13(a), 13(d) and 13(f), and Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2. The statutory provisions are set forth below.[1]

---

1. Section 2 of the Robinson-Patman Act, 15 U.S.C.A. § 13, provides in pertinent part as follows:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly received the benefit of such discrimination, or with customers of either of them * * *."

"(d) It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the dis-

Though the present complaint resembles its precursors, the fundamental activity complained of having been the same in each succeeding pleading, a marked increase has occurred in the length and scope of the complaint. The original complaint against one defendant contained one cause of action of fourteen paragraphs while the second amended complaint against three defendants comprises five causes of action with forty-seven paragraphs.

For a third time the complaint is attacked as failing to state any claim at all upon which relief can be granted against any defendant. On the occasion of each prior attack, decision upon the sufficiency of the pleadings was avoided by the acquiescence of the defendant in the service of an amended complaint.

The basic facts alleged in each complaint are that in June 1953 the Capehart-Farnsworth Corporation (hereinafter referred to as C-F) entered into a franchise agreement with Krug Distributors, Inc. (hereinafter referred to as Krug) under the terms of which Krug, a wholesaler, was designated as the sole distributor to sell C-F products, including radios, radiophonographs and television products, to retail dealers franchised by C-F within the "Newark Territory." In August 1953 C-F was merged with the International Telephone & Telegraph Corporation (hereinafter referred to as I. T. & T.), and I. T. & T. continued Krug as a distributor until August 1954. The products which Krug distributed were manufactured by C-F and I. T. & T. in Indiana and New Jersey. What plaintiffs complain of is that while Krug was a wholesale distributor for I. T. & T. the latter sold directly to retailers at lower prices than to Krug or with allowances not granted to Krug.[2]

---

tribution of such products or commodities."

"(f) It shall be unlawful for any person engaged in commerce, in the course of such commerce, knowingly to induce or receive a discrimination in price which is prohibited by this section."

Section 1 of the Sherman Act, 15 U.S. C.A. § 1, provides in part:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *."

Section 2 of the same Act, 15 U.S.C.A. § 2, reads:

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

2. In the original complaint, plaintiffs alleged: In 1953 and 1954 I.T. & T., in the course of interstate commerce, sold directly to retailers, who were in competition with customers of Krug, and to other wholesalers who were in competition with Krug, radio and television products of like grade and quality with the products sold to Krug at lower prices than those charged to Krug and with rebates and allowances not granted to Krug. These acts were claimed to result in a restriction and prevention of the sales of Krug and consequent damage to its business of $100,000. Plaintiffs alleged that under Section 4 of the Clayton Act, 15 U.S.C.A. § 15, they were entitled to recover treble the amount of the loss sustained by Krug since the activities of I.T. & T. were in violation of Sections 2 and 3 of the Robinson-Patman Act, 15 U.S.C.A. §§ 13, 13a. No specific subdivision or subdivisions of Section 2 were designated as being relied on by the plaintiffs.

Defendant I.T. & T. moved to dismiss the original complaint for failure to state a claim upon which relief could be granted, taking the position that (1) the complaint was deficient in that it contained no allegation that the discrimination charged by plaintiffs substantially lessened competition or tended to create a monopoly in any line of commerce or injured, destroyed or prevented competition with any person who either granted or knowingly received the benefit of such discrimination, or with customers of either of them; (2) there was no allegation that the sales involving any discrimination were in interstate commerce; and (3) as to Section 3 of the Robinson-Patman Act, not only were the pleadings deficient but there was serious question as to whether an action for damages could be maintained under the section. See Vance v. Safeway Stores, Inc., D.C. N.M.1956, 137 F.Supp. 841; National

After defendant I. T. & T. moved to dismiss the first amended complaint, plaintiffs cross-moved for leave to file a second amended complaint and to add as additional defendants Vim Electric Co., Inc. and Vim Television and Appliance Stores, Inc. (hereafter collectively referred to as Vim). This cross-motion was consented to by I. T. & T. which withdrew its motion to dismiss the first amended complaint.

The second amended complaint, to which the present motions are addressed, sets forth five causes of action, though it provides less detail as to the nature of the acts complained of than did its im-

Used Car Market Report, Inc., v. National Automobile Dealers Association, D.C.D.C.1951, 108 F.Supp. 692, affirmed 1952, 91 U.S.App.D.C. 313, 200 F.2d 359.

The first amended complaint contained two causes of action, one under Section 2 of the Robinson-Patman Act and the other under Sections 1 and 2 of the Sherman Act. The first cause of action constituted a redraft of the original complaint with frequent references to the interstate nature of the "radio-tv-appliance business" as a whole, Krug's own business as a distributor and I.T. & T.'s business as a manfacturer, seller and distributor. There was also included considerable elaboration upon the various ways in which it was claimed that I. T. & T. discriminated in favor of purchasers in competition with Krug and Krug's customers. Along with such specificity, plaintiffs alleged that it was subdivisions (a) (d) and (e) of Section 2 of the Robinson-Patman Act upon which their first cause of action was founded. It was claimed that I.T. & T.'s conduct forced Krug out of business, caused Krug to lose money because it had to meet the prices of I.T. & T.'s "favored customers," caused Krug to lose sales because of its inability to meet such prices, and lessened competition among retailers, giving I.T. & T.'s "favored customers" a virtual monopoly of the business of retailing I.T. & T.'s products. The second cause of action, based upon Sections 1 and 2 of the Sherman Act, incorporated the first cause of action with its allegations of price, allowance and service discriminations. In addition, plaintiffs alleged that I.T. & T. granted other advantages to "favored customers," including the availability of new models prior to the time they were made available to Krug and without any requirement for the purchase of obsolete models which Krug was required to take, as well as the right to return "defective" or overstocked goods, which Krug was forced to retain. It was alleged that all these acts were done by I.T. & T. pursuant to contracts, combinations and conspiracies with some or all of such "favored customers" with the purpose and effect of (a) restraining the trade and competition of Krug and its "nonfavored customers" in violation of Section 1 of the Sherman Act and (b) giving, or attempting to give local monopolies, wholesale and retail, to I.T. & T.'s "favored customers" in violation of Section 2. In conclusion it was charged that "the competition of independent retail and wholesale radio-tv-appliance dealers in the Newark area and surrounding counties has been reduced or eliminated so that since 1953 plaintiffs (sic) have been forced out of business and a substantial number of independent retail dealers have been forced out of the business of retailing defendant's products, thus effecting a reduction of competition to the injury of the public and of plaintiffs." Plaintiffs again sought $300,000 in treble damages.

Once more I.T. & T. moved to dismiss. The reasons given were these: (1) plaintiffs still failed to allege that the sales by I.T. & T. either to Krug or the so-called "favored customers" were in interstate commerce and thus there was no allegation that there was any discrimination "in the course of such commerce" as required by Section 2(a) of the Robinson-Patman Act; (2) the same deficiency appeared in the allegations under Section 2(d), for it was not alleged that any transaction interdicted by that provision occurred in the course of interstate commerce; (3) no allegations that I.T. & T. paid anything of value to or for the benefit of a customer of I.T. & T. or that whatever was allegedly paid was in consideration for services or facilities furnished by or through such customer were included, rendering the complaint insufficient under Section 2(d); (4) as to allegations under Section 2(d), nothing indicated contemporaneous transactions in which some purchasers from I.T. & T. were favored while Krug and others were not; and (5) the allegations said to give rise to a cause of action under the Sherman Act failed to demonstate any adverse effects upon the public or that there had been any restraint, monopoly or attempted monopolization of interstate commerce.

mediate predecessor.[3] As additional background to the various claims for relief, the plaintiffs now allege that defendants Vim were owners and operators of approximately 56 retail radio, television and appliance stores in New York and New Jersey and that Krug, C-F, I. T. & T. and Vim were all engaged in interstate commerce.[4] Following these introductory allegations, the plaintiffs set up their five causes of action the nature and sufficiency of which will be discussed seriatim.

### The First Cause of Action Under Section 2(a) of the Robinson-Patman Act.

The allegations to be considered are these: in 1953 and until August 1954, Krug was the sole wholesale distributor in the "Newark Territory" for radio and television products of C-F and its successor, I. T. & T. During this time, I. T. & T. sold and shipped merchandise to Krug from factories in New Jersey and Indiana for resale to retailers. I. T. & T. knew that Vim was among Krug's customers or prospective customers. While Krug was the sole franchised wholesaler of I. T. & T. in the "Newark Territory", I. T. & T. sold merchandise of like grade and quality as that sold to Krug directly to Vim and other "favored retailers" at prices substantially lower than those charged to Krug. Such retailers were in competition with Krug's customers.

Plaintiffs further allege that as a result of the foregoing "non-favored retailers were unable effectively to compete with, and had to sell at higher prices than Vim and other favored retailers; competition between Krug's customers and favored retailers was substantially lessened; the favored retailers tended to and did receive a monopoly in the retail sale of I. T. & T. products; and the public, in order to obtain the benefits of the above price reductions, were compelled to divert their patronage from retailers in their normal purchasing areas to the stores of favored retailers, wherever they happened to be located." As a direct consequence, the plaintiffs claim that Krug was injured in its business and property "by reason of loss of profits and sales and losses and expenses necessarily incurred in connection with going out of business (as compelled by such loss of profits and sales) and otherwise."

Defendant I. T. & T. bases its motion to dismiss the first cause of action upon two grounds: (a) the complaint still does not charge that I. T. & T. discriminated in price in contemporaneous sales of goods of like grade and quality, and (b) the complaint alleges that Krug is a wholesaler and Vim a retailer and prospective customer of Krug, hence sales by I. T. & T. to Vim and other favored retailers at prices less than those charged to Krug could not possibly constitute a violation of the Act because there was no

---

3. The second amended complaint is discussed in footnote 2 supra.

4. The allegations as to interstate commerce are chiefly these:

"Krug was engaged in interstate commerce as a distributor in the business of purchasing from manufacturers and distributing for them to retail dealers household appliances including, but not limited to, refrigerators, television receivers, radio receivers, phonographs and phonograph combinations;" "the transactions culminating in the retail sale of" radio and television appliances "engaged in by defendant International Telephone & Telegraph Corporation involve the crossing of State boundaries to procure and assemble the material and personnel necessary to manufacture, whole-

sale and retail the said goods, all of which constitutes, or directly relates to, interstate commerce," and "All the acts and practices set forth in interstate commerce as commerce is defined by the Antitrust Laws, in that defendant I.T. & T. manufactures its products in New Jersey and Indiana and sells and ships such merchandise from the aforesaid States to its customers located in the several States and Territories of the United States and the District of Columbia," and "During the course of said distributorship agreement (with Krug) the defendant I.T. & T. or its predecessor sold and shipped merchandise to Krug from its plants and factories in New Jersey and Indiana."

price discrimination between competitors.

A fair reading of the complaint gives the impression that all sales referred to occurred within such a limited period of time so as to be sufficiently contemporaneous to satisfy the Robinson-Patman Act. The necessary relationship of two sales to bring them within the scope of Section 2(a) is a matter of many facets, and a cause of action should not be dismissed for failure to plead complete details such as specific dates of sales.

Turning to the defendant's second ground for dismissal, the defendant cites certain language in Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 1949, 176 F.2d 1, 7, 10 and refers to Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 45, 68 S.Ct. 822, 92 L.Ed. 1196, both of which opinions at the pages indicated clearly reflect what is readily apparent from the Act itself that a violation occurs when a seller has charged one purchaser a higher price than he charged one of the purchaser's competitors, the requisite effect upon competition being present. Falling victim to the suggestion that price discrimination violates the Act only when it involves sales made directly to two competitors or purchasers in the same level of the distribution process, the plaintiffs attempt to overcome the supposed deficiency by arguing that Krug was in competition with both I. T. & T. and Vim.

But there can be no doubt that a violation of Section 2(a) may occur when a manufacturer sells his products to a retailer at a lower price than that charged to a wholesaler whose customers compete with the retailer. Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 55, 68 S.Ct. 822, 92 L.Ed. 1196. Certainly, one of the well-known purposes of the Robinson-Patman amendment to the Clayton Act was to protect independent wholesalers from discriminatory concessions given by manufacturers to retailers whose size and volume of sales lead to a by-passing of the wholesaling function. In the Morton Salt case, the Supreme Court had before it a cease-and-desist order issued by the Federal Trade Commission. Of paragraph (c) of the order the Court said, 334 U.S. at page 55, 68 S.Ct. at page 832:

"This leaves for consideration the objection to paragraph (c) of the order which reads: 'By selling such products to any retailer at prices lower than prices charged wholesalers whose customers compete with such retailer.' The only criticism here urged to (c) is that it bars respondent from selling to a retailer at a price lower than that charged a wholesaler whose customers compete with the retailer. Section 2(a) of the Act specifically authorizes the Commission to bar discriminatory prices which tend to lessen or injure competition with 'any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them.' This provision plainly supports paragraph (c) of the order."

The only question which is posed as to the sufficiency of the complaint seems to be whether a wholesaler can maintain an action for treble damages under Section 2(a) when his injury arises not because the price discrimination destroys his competitive ability vis-a-vis others on the same distributive level but because the discrimination renders his customers unable to compete with favored purchasers on the retail level. Regardless of the scanty allegations of the complaint as to the nature of the injuries suffered by Krug, the first cause of action surely claims that Krug's position as a franchised wholesaler was such at the time I. T. & T. sold merchandise of like grade and quality directly to Vim and other retailers at lower prices that the latter transactions had serious financial impact upon Krug. The details are lacking, but the fair intendment appears to be that Krug found it had taken down merchandise which no retailer would buy or could sell because of the latter's inability to effectively compete in retail sales.

There does not seem to be any sound reason why under these circumstances a wholesaler should not be entitled to maintain an action under Section 2(a) for damages, assuming that there has been a lessening of or injury to competition through discriminatory pricing by a manufacturer. The wholesaler is one of the immediate purchasers from the manufacturer and it would seem to make no difference that his injury was not suffered by his inability to compete with others on his own distributive level but by the failure of his customers to meet the competition of another immediate purchaser from the manufacturer. If what the plaintiffs allege is true there has been a lessening of and injury to competition and it has occurred as a result of violation of Section 2(a). It would seem that an injured purchaser from the discriminating seller is provided with a cause of action for damages by Section 4 of the Clayton Act.

No pertinent authorities are cited by the parties, and independent research does not readily disclose any similar case. Both parties claim support from the decision in Klein v. Lionel Corporation, D.C.D.Del.1956, 138 F.Supp. 560. Upon close analysis, however, it is clear that the Court there held that no violation of Section 2(a) had occurred since the seller had sold to both wholesalers and retailers at identical prices.

The motion of defendant I. T. & T. to dismiss the first cause of action is denied.

### The Second Cause of Action Under Section 2(d) of the Robinson-Patman Act.

The second cause of action avers that I. T. & T. granted or paid allowances to "favored retailers", particularly Vim, for alleged advertising and promotional purposes, but denied such allowances to Krug or its customers.

Again, defendant I. T. & T. emphasizes that Krug was not in competition with Vim or any other retailer and that consequently there can be no violation of the Act since I. T. & T. did not discriminate between "customers competing in the distribution" of its products. The answer already given above to this argument will suffice here, if the meaning and scope of Section 2(d) is similar to that of Section 2(a). On the one hand, it would, upon first reading, seem that the language chosen by Congress for Section 2(d) is more limited than that for Section 2(a). The latter embraces within the area of competitive protection "different purchasers * * * or * * * customers of either of them", while the former uses the phrase "customers competing in the distribution" of a particular product. On the other hand, it would seem that Congress intended by Section 2(d), as well as by Sections 2(c) and (e) for that matter, to prevent circumvention of the prohibitions of Section 2(a) by the employment of alternatives for price concessions.

As observed by the Supreme Court in Automatic Canteen Co. v. Federal Trade Commission, 1953, 346 U.S. 61, 65, 78, 73 S.Ct. 1017, 1020, 97 L.Ed. 1454, "precision of expression is not an outstanding characteristic of the Robinson-Patman Act." And, as in that case, although a "confident answer cannot be given; some answer must be given." The conclusion reached by the Supreme Court was arrived at by reading the "infelicitous language * * * as enacting what we take to be its purpose." That approach will be followed here.

It is concluded that the purpose of Section 2(d) is to place discriminatory allowances on the same basis as price discriminations prohibited by Section 2(a) and that consequently the same set of circumstances give rise to a cause of action under Section 2(d), if the discrimination takes the form of unequal allowances or services, as would be the case if the discrimination were a direct price discrimination under Section 2(a). This means that violation of Section 2(d) may occur when a manufacturer gives a retailer an allowance not given to a wholesaler whose customers compete with such retailer. It having been already held that the plaintiffs have sufficiently stated a similar cause of action under Section 2

(a), the same disposition should be made of the motion for dismissal of the second cause of action unless there are other grounds requiring dismissal.

Defendant I. T. & T. argues that the second cause of action is deficient because it fails to allege that the sales and shipments of merchandise which are the subject of this action were transactions in the course of commerce. Defendant's argument is that it is entirely possible under the language of the complaint that the merchandise involved never entered interstate commerce but was manufactured and sold to Krug in New Jersey. Certain allegations as to interstate commerce, set out in footnote 4, are susceptible of that construction. But a more reasonable reading of all of the related allegations as to interstate commerce, especially in view of the prior motions to dismiss, seems to be that the plaintiffs intend to allege that all merchandise referred to in any paragraph of the complaint as being sold to Krug, necessarily including merchandise shipped from Indiana to Krug in New Jersey, was the subject of violations of Section 2 of the Robinson-Patman Act. This is not to say that it is not quite possible that some or a considerable amount of the merchandise sold to Krug came from the New Jersey plant of I. T. & T.

The motion of defendant I. T. & T. to dismiss the second cause of action is denied.

### The Third Cause of Action Under Section 2(f) of the Robinson-Patman Act.

On the basis of the violations alleged in the first and second causes of action, the plaintiffs found a further cause of action under Section 2(f) against Vim.

The complaint avers that Vim received discriminatory prices and allowances from I. T. & T. knowing that the same prices were not extended to Krug. The actual allegation reads: "Defendant Vim received said lower, discriminatory prices and alleged advertising and promotional allowances (prohibited by Sections 2 (a) and (d)) knowing the same had not been given, granted or otherwise made available to Krug or its customers, or others similarly situated." It is also charged that the allowances procured and obtained by Vim from I. T. & T. were not used for advertising and promotional purposes but constituted an additional rebate, discount or price differential, likewise received by Vim knowing that the same benefits were not given to Krug.

Defendant Vim moves to dismiss the third cause of action on the ground that it is not sufficient merely for plaintiffs to allege the words of Section 2(f), because the plaintiffs cannot recover under the section unless they establish that Vim knew that the alleged price or allowance differentials given to Vim by I. T. & T. were not justified by cost differences to I. T. & T. In other words, Vim argues that the plaintiffs must allege and prove that Vim knowingly received discriminatory prices and allowances and that Vim knew when the purchases were made that the lower prices and greater allowances were not within one of the defenses available to I. T. & T. under Section 2.

In support of its position, Vim cites Automatic Canteen Co. v. Federal Trade Commission, 1953, 346 U.S. 61, 73 S.Ct. 1017, 97 L.Ed. 1454. In this case, the Supreme Court had occasion to review for the first time the meaning and effect of Section 2(f). The Court held that there is no violation of the section if the lower prices induced or received by a buyer are within one of the seller's defenses, such as cost justification, or are not known by him not to be within one of the seller's defenses. The Court also held that, so far as the burden of proof is concerned, the Federal Trade Commission cannot rest merely on a showing that the buyer knew the price he induced or received was lower than that offered to other buyers. But this decision does not affect the fundamental statutory provisions. It is still a violation of Section 2 (f) for a buyer "knowingly to induce or

receive a discrimination in price which is prohibited by this section."

The plaintiffs have alleged the necessary elements of a violation of Section 2(f). Upon the trial of this action, plaintiffs may find discharging their burden of proof a difficult task, but plaintiffs are not required to incorporate in the complaint all the evidence which is necessary to prove their allegations.

The motion of defendants Vim to dismiss the third cause of action is denied.

### The Fourth and Fifth Causes of Action Under Sections 1 and 2 of the Sherman Act.

■ The fourth cause of action incorporates the allegations of the first three causes of action and in addition merely alleges:

"44. Defendants entered into agreements, arrangements, contracts and combinations whereby I. T. & T. granted or attempted to grant Vim and other favored retailers local retail monopolies of its products and thus restrained the trade of other retailers, including Krug's customers, in exchange for which Vim and other favored retailers increased their purchases from I. T. & T. or its predecessor."

The fifth cause of action is pleaded in the same fashion as the fourth, the only allegation other than those incorporated from earlier causes of action being:

"46. As part of the conspiracy, combination and restraint of trade hereinbefore alleged, defendants attempted to conceal or disguise the foregoing acts of favoritism to Vim and others. It was agreed that the merchandise sold to Vim and other favored retailers would be described or referred to as closed-out, discontinued merchandise or the like, when this was not the case. In fact, said merchandise was of the same grade and quality as other merchandise currently and subsequently sold and delivered by defendant I. T. & T. and its predecessor to Krug and others."

All the plaintiffs have done in the fourth and fifth causes of action is to make conclusory statements of restraint and monopoly, which even on their face do not necessarily amount to violations of the Sherman Act.

What was recently said in Baim & Blank, Inc., v. Warren-Connelly Company, Inc., D.C.S.D.N.Y.1956, 19 F.R.D. 108, 109, may well be noted here for its pertinency:

"These are motions addressed to a complaint which seeks treble damages and injunctive relief based upon alleged violations of the Robinson-Patman Act * * * and the Sherman Act * * *. This complaint is subject to the same deficiencies which led Judge Weinfeld to dismiss almost similar complaints in Baim & Blank, Inc., v. Admiral Corporation, D.C.S.D.N.Y.1955, 132 F.Supp. 412 and in Baim & Blank, Inc., v. Vim Television & Appliance Stores, Inc., D.C.S.D.N.Y.1955, 139 F.Supp. 378.

"The modern 'notice' theory of pleading is not sufficient when employed in a complaint under the anti-trust laws. It is all very well for Professor Moore to state that: " 'The modern philosophy concerning pleadings is that they do little more than indicate generally the type of litigation that is involved.' [Moore, Federal Practice (2d Ed.) Vol. 2, p. 1607.] This will not do in this type of case. If a complaint contains nothing more than general allegations that defendants have violated various provisions of the anti-trust laws combined with a prayer for relief, such a pleading, as I have previously said, 'becomes a springboard from which the parties dive off into an almost bottomless sea of interrogatories, depositions, and pretrial proceedings on collateral issues, most of which may have little relationship to the true issue in the case.' [New Dyckman Theatre Corp. v. Radio-Keith-Orpheum Corp., D.C.S.D. N.Y.1954, 16 F.R.D. 203, 206.]

"For these reasons, it is not practical in these cases to proceed as in a negligence case or in a simple commercial case. [Bader v. Zurick General Accident & Liability Ins. Co., D.C.N.Y.1952, 12 F.R.D. 437.] To do so would cause both court and counsel to become bogged down in the endless problems that will arise in pre-trial discovery proceedings.

The complaint should show the relationship of the parties, the specific acts complained of, and the relation of the acts to the damages claimed.

"A Judge who had to pass upon the propriety of interrogatories or on the relevance of questions on depositions, with nothing more to guide him than the present vague complaint, would be left completely at sea."

The motions of defendants I. T. & T. and Vim to dismiss the fourth and fifth causes of action are granted.

An appropriate order may be submitted.