**VANCO BEVERAGES, INC.,**
Plaintiff-Appellee,
v.
**FALLS CITY INDUSTRIES, INC.,**
Defendant-Appellant.

No. 80–1709.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1980.

Decided July 15; 1981.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1981.

Howard Adler, Jr., Bergson, Borkland, Margolis & Alder, Washington, D. C., for defendant-appellant.

Gordon B. Nash, Jr. and John T. Cusack, Gardner, Carton & Douglas, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and BROWN, Senior District Judge.*

CUMMINGS, Chief Judge.

Defendant Falls City Industries, Inc. (Falls City) appeals from a judgment awarding plaintiff Vanco Beverages, Inc. (Vanco) $1,725,881.37 in treble damages for injury resulting from Falls City's discriminatory pricing of beer in violation of Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)) and $17,251.27 for monies had and received by Falls City as a result of overcharging Vanco for state excise taxes. We affirm except as to the amount of damages awarded under Section 2(a).

---

* The Honorable Wesley E. Brown, Senior District Judge of the District of Kansas, is sitting by designation.

1. Ind.Code Ann. § 7.1–3–3–5 (Burns 1979); Ky. Rev.Stat. § 243, 244 (1970).

2. Ind.Code Ann. § 7.1–5–5–7 (Burns 1979).

## I. Introduction

Falls City formerly operated a brewery in Louisville, Kentucky, that marketed beer under the names "Falls City Beer" and "Drummond Bros. Preferred Beer." Vanco, located in Evansville, Indiana, was formerly the sole wholesale distributor of Falls City beer in Vanderburgh County, Indiana, which includes the city of Evansville. Vanderburgh County is located just north of Henderson County, Kentucky, with their common border running mostly along the Ohio River. Beer retailers in both states are required by state law to purchase beer for resale only from authorized distributors in their respective states.[1] Indiana law also requires that each brewer sell at a uniform price to all its Indiana wholesale distributors.[2]

In November 1977, Vanco filed its first amended complaint in this lawsuit.[3] That complaint, as subsequently amended and supplemented, alleged that Falls City sold a substantial quantity of beer brewed in Kentucky to wholesale distributors, including Vanco, located in Indiana; that beer retailers in Henderson County, Kentucky, were in competition with beer retailers in Vanco's distribution area; that from July 1, 1972, to November 30, 1978, Falls City sold its beer to Kentucky wholesalers at prices lower than those granted to Vanco; that this discriminatory pricing policy resulted in higher retail prices in Indiana than in Kentucky; and that as a consequence many Indiana consumers purchased Falls City beer from Kentucky retailers instead of Indiana retailers, thereby causing Indiana retailers to purchase less Falls City beer from Vanco.

Count I alleged that from July 1, 1972, to November 30, 1978,[4] Falls City and various

---

3. The original complaint was filed on December 28, 1976.

4. November 30, 1978, is the date on which Falls City abandoned beer-making in favor of other lines of business.

unnamed beer wholesalers in Kentucky conspired to restrain trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and conspired to monopolize the sale of Falls City beer in the relevant market area in violation of Section 2 of the Sherman Act (15 U.S.C. § 2), thereby damaging Vanco in an indeterminate amount.[5] Count II alleged that Falls City had engaged in discriminatory pricing in violation of Section 2(a) of the Robinson-Patman Act, thereby causing Vanco to pay in excess of $500,000 more for Falls City beer than defendant's Kentucky wholesalers over the relevant six-year period for the same quantity and quality of beer. Count III, a pendent state law claim for money had and received, alleged that Falls City overcharged Vanco for Indiana excise taxes by an amount in excess of $17,000 and that Falls City did not pay these overcharges to the State of Indiana but retained them for its own use. Vanco sought treble damages under Counts I and II, return of the Indiana tax overcharges alleged in Count III, and injunctive relief to prevent Falls City from selling its products to Kentucky wholesalers at a lower price than it granted Vanco and from overcharging Vanco for state excise taxes.[6]

After a five-day bench trial in May 1979, the district court dismissed the Sherman Act claims in Count I for want of proof, but found in favor of Vanco on Counts II and III in the respective amounts of $575,293.79, before trebling under Section 4 of the Clayton Act (15 U.S.C. § 15), and $17,251.27 plus interest. No equitable relief was granted.[7] At the close of the trial, the district court called for briefs and for proposed findings of fact and conclusions of law. The last of these documents was filed in January 1980. The court's amended findings of fact, conclusions of law and judgment, drawn from the parties' proposals and the court's own additions, were released on April 14, 1980,

and are reported in CCH 1980–2 Trade Cases ¶ 63,357. This appeal followed.

## II. Elements of the Robinson-Patman Violation

Section 2(a) of the Robinson-Patman Act provides in pertinent part:

"That it shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption or resale within the United States * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them * * *." (15 U.S.C. § 13(a)).

In concluding that Falls City violated this provision, the district court relied on the following ultimate findings of fact: that from July 1, 1972, to November 30, 1978, Falls City sold beer to Vanco at f.o.b. prices approximately 10% to 30% higher than prices charged Dawson Springs Beverage Company, the Falls City distributor for Henderson County, Kentucky, and other Kentucky distributors; that the Evansville, Indiana, and Henderson, Kentucky, areas constitute a unified retail beer market; that Falls City's discriminatory pricing policy substantially lessened competition in the Evansville-Henderson market; and that Falls City could have sold to Vanco and Dawson Springs at the same price, but chose "to get a higher price in Indiana than in Kentucky."

---

5. Vanco later asserted that its going-concern value had diminished by $766,000 and that Falls City had overcharged it by $565,000 as a result of the Sherman Act violations (App. A–4).

6. Two additional counts against Falls City and Working Beverage, Inc., a competitor of Van-

co's in Vanderburgh County, Indiana, were dismissed as moot by plaintiff before trial (App. A–1—A–27).

7. Since Falls City was no longer in the brewery business (note 4 supra), equitable relief was, of course, unnecessary.

Falls City concedes that it sold beer to Vanco and Dawson Springs at different prices, but challenges as "legally and factually erroneous" the district court's findings with respect to other elements necessary to establish a Section 2(a) violation. However, Vanco has carefully annotated those findings to 165 portions of the transcript of trial testimony and depositions as well as to exhibits of both parties (Supp.App. A–16—A–23). An examination of the annotated materials and the record generally has convinced us that the court's findings are not clearly erroneous and that the record supports its conclusion that Falls City violated Section 2(a).

## A. Interstate Commerce

■ Falls City argues in a footnote in its principal brief that the interstate features of Section 2(a) were not satisfied. This argument is frivolous. Even Falls City's president, James F. Tate, admitted both in his deposition (at p. 16) and at trial (Supp. App. A–81) that his company sold beer in Indiana. Moreover, Falls City allocated Vanderburgh County, Indiana, to Vanco as its exclusive territory for the wholesale distribution of Falls City beer, paid Indiana excise taxes on the beer sold to Vanco and participated in Vanco's Indiana sales by the soliciting and servicing of Vanco's retail accounts there. Thus the sale of Falls City beer to Vanco was clearly "in commerce" within the meaning of Section 2(a). *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378; *Standard Oil Co. v. Federal Trade Commission*, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239. The facts that Falls City priced its beer f.o.b. Louisville and that all its distributors, including Vanco, picked up their beer at the brewery in Louisville do not, as Falls City suggests, make the sales to Vanco wholly intrastate.[8]

## B. Relevant Market

■ Falls City next argues that there is no unified Evansville-Henderson retail beer market and that the district court therefore erred in finding that Vanco and Dawson Springs, Falls City's Henderson County distributor, competed in the same market. However, the record is to the contrary insofar as their retail customers were concerned and that is sufficient under the Act.

As noted, Vanderburgh County, Indiana, and Henderson County, Kentucky, are separated for most of their common border only by the Ohio River. In addition, a portion of Henderson County lies on the Indiana side of the river contiguous to Evansville. The cities of Evansville and Henderson are diagonally across from each other on the river ten or fewer miles apart and are connected by a four-lane interstate highway. There is a massive flow of residents of Vanderburgh County to work in Henderson County and vice versa, and shopping centers and entertainment facilities in the area are patronized by residents of both counties. Consequently, the federal Department of Labor counts the two counties together for the purpose of labor statistics, and both areas are designated as one by the federal Department of Commerce. Moreover, many retail purveyors of beer and liquor are located along a Kentucky portion of the highway connecting Evansville and Henderson only a few miles from Evansville. This area, known as "The Strip," is frequented by both Indiana and Kentucky consumers. Finally, various witnesses testified that consumers in the area go to whichever county has the cheaper beer and liquor prices and that advertising is directed at residents of both areas as if they constituted one market. Thus the district court's finding that beer retailers in Vanderburgh County were in competition with those in Henderson County is not clearly erroneous.[9]

---

8. Falls City's reliance on *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763 (7th Cir. 1973), certiorari denied, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102, is misplaced. In that case, the plaintiff, its competitors and the defendant were all located in Illinois so that, although the defendant did make interstate sales, no interstate transaction was involved in the relevant market.

9. We note also that Evansville-Henderson has previously been recognized as a single market for dairy products. See *Dean Milk Company v.*

Section 2(a) by its terms bans price discrimination that tends to lessen competition not only among sellers (primary-line competition) but also among their "customers", and it is well settled that the statutory protection of "customers" extends to at least the fourth level of distribution. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 647, 649, 89 S.Ct. 1871, 1874, 1875, 23 L.Ed.2d 599; see generally, Kintner, *A Robinson-Patman Primer* (2d ed. 1979) at 108–110.[10] Consequently, the fact that Vanco's customers were in competition with Dawson Springs' customers is sufficient to bring Falls City's discriminatory pricing within the ambit of Section 2(a) even though Vanco and Dawson Springs were themselves precluded by state law (note 1 *supra*) from competing for the same retail accounts.

## C. Competitive Injury

Falls City also contends that the district court erred in finding the requisite competitive injury. Again, we disagree. Section 2(a) requires only proof that the price discrimination shown "create a reasonable probability of substantial injury to competition." *Bargain Car Wash, Inc. v. Standard Oil Co. (Indiana)*, 466 F.2d 1163, 1174 (7th Cir. 1972). It is well settled that such a showing is established where the price differential is "sufficient to influence retail prices." *Federal Trade Commission v. Morton Salt Company*, 334 U.S. 37, 49, 68 S.Ct. 822, 829, 92 L.Ed. 1196; *Bargain Car Wash, supra*, 466 F.2d at 1174. Here it is not disputed that Falls City over a six-year period charged Vanco prices varying from approximately 10% to 30% higher than it charged Dawson Springs and other Kentucky distributors. The record indicates that Vanco passed on some of this price differential, which is indisputably substantial, to its customers, that the relevant retail beer prices in Evansville were $.50 to $1.50 higher per case than in Henderson

County during the relevant period, and that Vanco over the same period suffered a sharp decline in Falls City beer sales.

Falls City argues that the brewery price differential contributed only minimally to the retail price differential and that the decline in Vanco's Falls City sales was principally due to the increased popularity of competing major brand beers. However, Vanco was not required to show "that the illegality was a more substantial cause [of its injury] than any other." *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 143, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982. It is sufficient "with respect to causation if the defendant 'materially contributed' to plaintiff's injury * * * or 'substantially contributed notwithstanding other factors contributed also.'" *Id.*; see also *Bargain Car Wash, supra*, 466 F.2d at 1174, and cases cited therein. Moreover, there is testimony in the record to support the conclusion that the major reason for the higher Indiana retail beer prices was the higher prices charged Indiana distributors, and there is ample evidence, summarized by the district court, that the lower retail prices in Henderson County attracted Indiana customers away from Indiana retailers, thereby causing the retailers to curtail purchases from Vanco. Finally, while it is true that Falls City beer sales declined between 1972 and 1978 throughout Indiana and Kentucky, Vanco's volume dropped almost 60% while Indiana sales as a whole declined only 44%, and Dawson Springs' volume dropped only 40% while Kentucky sales as a whole declined more than 46%. We do not find unreasonable the district court's conclusion that the more precipitous decline in Vanco's sales volume, as compared both with the substantially lesser decline in Dawson Springs' sales and the overall rates of decline in Indiana and Kentucky, was due to

*Federal Trade Commission*, 395 F.2d 696, 698 (7th Cir. 1968).

**10.** The holding in *Perkins* was presaged by *Krug v. International Telephone & Telegraph Corp.*, 142 F.Supp. 230, 235–236 (D.N.J.1956), on which Vanco relies. Falls City cites Rowe,

*Price Discrimination Under the Robinson-Patman Act* (1962) as authority that any market beyond secondary-line injury is not protected by Section 2(a), but the author's early interpretation ignores the statutory language and was rejected in *Perkins*.

the loss of Evansville retail business to competing retailers in Henderson County.[11]

## D. *Meeting Competition Defense*

■ Falls City also argues that it was entitled to use the meeting competition defense contained in Section 2(b) of the Robinson-Patman Act (15 U.S.C. § 13(b)). Section 2(b) permits a seller to rebut a *prima facie* case under Section 2(a) by showing that its lower price to any purchaser "was made in good faith to meet an equally low price of a competitor * * *." This Section "places emphasis on individual situations, rather than upon a general system of competition," and is designed to allow a seller to defend his business against genuine price competition. *Federal Trade Commission v. A. E. Staley Manufacturing Co.*, 324 U.S. 746, 753, 65 S.Ct. 971, 974, 89 L.Ed. 1338. However, the exception does not justify the maintenance of discriminatory pricing among classes of customers that results merely from the adoption of a competitor's discriminatory pricing structure. *Id.* at 756, 65 S.Ct. at 976.

■ The district court rejected Falls City's Section 2(b) defense on the basis of its findings that Falls City's discriminatory pricing resulted from price increases in Indiana, not price decreases in Kentucky, and that in setting its Indiana prices Falls City was simply taking advantage of its competitors' policies of charging higher prices in Indiana than in Kentucky and other states. These findings are not clearly erroneous. There is nothing in the record to show that Falls City first adopted a non-discriminatory pricing structure and then reduced prices where necessary to defend against competition. Indeed, Falls City's president testified that Falls City's Indiana price was set higher than its Kentucky price "because we followed the leaders, the pricing of the leaders of the beers in Indiana as far as their dock prices were concerned" (Tr. 948). The district court therefore did not err in finding that Falls City had failed to meet its burden of showing that its discriminatory pricing was a good faith effort to defend against competitors. Cf. *A. E. Staley Manufacturing Co., supra.*

In sum, our review of the evidence in the record does not leave us "with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746. Accordingly, we affirm the trial court's finding that Falls City is liable to Vanco under Section 2(a) of the Robinson-Patman Act.

## III. *The Measure of Damages*

The district court found that Vanco was injured in two ways over the relevant six-year period by Falls City's discriminatory pricing policy. First, it was forced to pass some of the price differential on to its customers in order to remain profitable and in turn suffered a loss in sales volume. Second, it was forced to absorb some of the price differential in order to stay competitive (that is, to keep its customers competitive) and thereby narrowed its profit margin. These factors demonstrate the requisite causal connection between the illegal price discrimination and the injury suffered. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648, 89 S.Ct. 1871, 1874, 23 L.Ed.2d 599. The district court further determined that Vanco's increased cost of doing business was $575,293.79, the total amount of the overcharges from 1972 to 1978, and therefore awarded that amount, trebled, to Vanco.

■ Falls City does not dispute the calculation of the overcharges, but insists that Vanco is entitled to recover only for lost profits. The district judge awarded damages under the automatic damage rule that a plaintiff who has proved itself damaged by illegal price discrimination is entitled to

---

11. Falls City contends that Vanco's sales dropped only 58% while Indiana sales as a whole dropped 48% and that the district court's figures are erroneous. Even assuming, however, that Falls City's figures are correct, they still support an inference that Vanco lost sales at a greater rate than Indiana generally or Dawson Springs in Kentucky because of cross-over purchasing from Evansville to Henderson County.

recover the amount of the discrimination. *Bruce's Juices, Inc. v. American Can Co.,* 330 U.S. 743, 757, 67 S.Ct. 1015, 1021, 91 L.Ed. 1219; *Fowler Manufacturing Company v. Gorlick,* 415 F.2d 1248, 1251–1252 (9th Cir. 1969), certiorari denied, 396 U.S. 1012, 90 S.Ct. 571, 24 L.Ed.2d 503; *Elizabeth Arden Sales Corp. v. Gus Blass Co.,* 150 F.2d 988, 996 (8th Cir. 1945), certiorari denied, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467.[12] Our Circuit has followed this rule of damages. *Grace v. E. J. Kozin Co.,* 538 F.2d 170, 174 (1976); see also *American Can Co. v. Lagoda Canning Co.,* 44 F.2d 763 (7th Cir. 1930), certiorari denied, 282 U.S. 899, 51 S.Ct. 183, 75 L.Ed. 792 (decided under Section 2 of the Clayton Act, 38 Stat. 730, before amendment by the Robinson-Patman Act).[13] However, that rule was just rejected by the Supreme Court. *J. Truett Payne Co. v. Chrysler Motors Corp.,* —— U.S. ——, —— – ——, 101 S.Ct. 1923, 1925–28, 68 L.Ed.2d 442 (1981).

Nevertheless, as the district judge recognized, an antitrust plaintiff is not required to prove the exact amount of its damages. A reasonable approximation will suffice. *J. Truett Payne Co. v. Chrysler Motors Corp., supra,* —— U.S. at ——, 101 S.Ct. at 1929; *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 265–266, 66 S.Ct. 574, 580, 90 L.Ed. 652; *Federal Trade Commission v. Morton Salt Co.,* 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196; *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129. Here, if Falls City had sold its beer to Vanco at the same price it charged Dawson Springs, Vanco could have retained the difference, and it therefore appeared reasonable for the district court to award Vanco the amount of the overcharges.[14]

Unlike the situation in *J. Truett Payne Co.* where the lower courts bypassed the issue of liability and did not find a violation of the Robinson-Patman Act (—— U.S. at ——, 101 S.Ct. at 1929), Judge Holder correctly found that Vanco "proved the facts of each of the essential legal elements of the [Robinson-Patman] action * * * by a preponderance of the evidence" (defendant's App. A–28; see also A–29). Therefore, on remand, under *J. Truett Payne Co.* he must now assess plaintiff's damages by virtue of lost sales and profits. Since the case was largely tried and decided on the now repudiated "automatic damage" rule, the district judge is empowered to consider further evidence on the damage phase of this case.

## IV.  *The Excise Tax Overcharges*

The district court found with respect to Count III of Vanco's first amended complaint that Falls City had wrongfully overcharged Vanco for Indiana excise taxes from 1961 to 1976 by paying the correct tax to Indiana and then billing Vanco for a greater amount.[15] For example, a typical 1973 invoice shows a 21¢ overcharge on 672 cases of beer (Supp.App. A–51). Similar small overcharges over the 15 years in question were found to total $17,251.77. Vanco discovered the overcharges in the summer of 1976 when it contemplated filing the Section 2(a) claim. Falls City ended the overcharges in October 1976, after Vanco's president brought the problem to Falls City's attention.

Falls City asserts that its practice had been simply to round out to the next

12. In the subsequent case of *American Can Co. v. Russellville Canning Co.,* 191 F.2d 38 (8th Cir. 1951), the Eighth Circuit reiterated the rule that "ordinarily, where a seller is guilty of unlawful discrimination in prices between customers, the amount of the price difference is the measure of damages * * *."

13. *Contra, Enterprise Industries Inc. v. Texas Co.,* 240 F.2d 457 (2d Cir. 1957), certiorari denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914; *Edward J. Sweeney & Sons v. Texaco, Inc.,* 637 F.2d 105 (3d Cir. 1980).

14. The district court's seeming reasonableness in assessing damages is underscored by the fact that it declined to award Vanco the $766,-000 claimed as the loss of its going-concern value, which, on the basis of the court's findings, was attributable in part to Falls City's price discrimination.

15. The tax was levied on all brewers selling to Indiana purchasers on a per-gallon basis, and Falls City passed this tax on to its distributors.

highest tenth-cent the tax amount due to Indiana, and that this practice did not result in overcharges to Vanco because the total amount charged, consisting of the "unit price" and the "tax," was always equal to the announced f.o.b. price. In short, Falls City's argument is that any concealed overcharges in the "tax" component of the total price was offset by equivalent concealed undercharges in the "unit price" component so that Vanco paid the same total amount it would have had to pay had the breakdown between tax and unit price been calculated correctly on the invoices. However, the district court found, and the evidence supports its finding, that the controlling figures in each transaction were those listed on the invoice, not on the price announcement. The invoices show that the excise tax was treated as a distinct item from the unit price and that Vanco was consistently charged a higher amount for excise tax than was due or paid to Indiana.

The district court also found that the relevant statute of limitations was tolled because Falls City's conduct was a "continuing wrong" and was "concealed" by Falls City from Vanco, which relied on Falls City to calculate the tax and prices correctly. In so finding, the district court was entitled to assess the credibility of the witnesses, and it was persuaded that Falls City's conduct had misled Vanco sufficiently so that under Indiana law it should not be permitted to repudiate the conduct.[16]

Again, we find no clear error in the district court's factual findings, and on the basis of those findings, Vanco was entitled under Indiana law for money had and received to have restored to it the difference between the amount Falls City paid Indiana and the higher amount it charged Vanco. *American Fletcher National Bank and Trust Co. v. Flick*, 146 Ind.App. 122, 130, 252 N.E.2d 839 (1970); *Ashton v. Shepherd*, 120 Ind. 69, 22 N.E. 98, 111 (1889).

For the foregoing reasons, the judgment is affirmed except as to damages under Count II.[17] The cause is remanded for the proper assessment of damages under that Count. Costs on appeal are to be borne by both parties.

SWYGERT, Circuit Judge, dissenting.

I dissent from the majority's opinion because Falls City proved as a matter of law a meeting of competition defense under section 2(b) of the Robinson-Patman Act, 15 U.S.C. § 13(b).[1] The majority agrees with the district court's holding that the situation here is like the one in *FTC v. A. E. Staley Mfg. Co.*, 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338 (1945).[2] The *Staley* holding, however, is not at all apposite to the situation in this case. In *Staley*, the defendants had adopted a basing-point system used by their competitors in the manufacture and sale of glucose. This pricing system was found illegal in a related opinion, *Corn Products Refining Co. v. FTC*, 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320 (1945). The Court held in *Staley* that defendants' show-

---

**16.** Ind.Code § 2–609 (1977) provides: "If any person liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation, after the discovery of the cause of action." The Indiana courts have interpreted this statute to estop a defendant from relying on a statute of limitations where "in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct." *Marcum v. Richmond Auto Parts Co.*, 149 Ind. App. 120, 270 N.E.2d 884, 888 (*in banc* 1971).

**17.** Other arguments raised by Falls City have been considered, but do not merit discussion.

Since Judge Holder is already familiar with the facts of this case, Circuit Rule 18 will not apply to the damage trial.

**1.** Section 2(b), 15 U.S.C. § 13(b) (1976), reads in relevant part,

. . . nothing herein contained shall prevent a seller rebutting the prima facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet as equally low price of a competitor, or the services or facilities furnished by a competitor.

**2.** *See* majority opinion, *supra*, pp. 1230–1231.

ing that they had followed the illegal pricing system of their competition did not prove a defense under section 2(b) to justify the price discrimination.[3] In this case, on the other hand, no one has suggested that the prices charged in Indiana by Falls City's competitors—the larger brewers such as Anheuser-Busch and Pabst—were at all illegal, so that merely following their prices did not by itself make Falls City's pricing policies illegal.

The majority opinion and the district court both view the price discrepancies as a result of Falls City's *raising* its prices to its Indiana wholesalers. That statement is no more accurate than it would be to state that the differentials were caused by *lowering* the prices to Falls City's Kentucky customers. There was no norm or starting point against which such statements could be tested. Pricing policies are the result of competitive forces that develop over the years. The fact that brewers' prices, including Falls City's, have reached a higher level in Indiana than in Kentucky is only a reflection of those trends. The majority ignores this fact and bases its opinion solely on the existing discrepancy in prices charged by Falls City. A determination as to whether Falls City has shown a meeting-competition defense cannot rest on so narrow a perspective. As the Supreme Court has noted, a section 2(b) defense is to be "a flexible and pragmatic, not technical or doctrinaire, concept." *United States v. United States Gypsum Co.*, 438 U.S. 422, 454, 98 S.Ct. 2864, 2882, 57 L.Ed.2d 854 (1978), quoting *Continental Baking Co.*, 63 F.T.C. 2071, 2163 (1963).

While it is true that Robinson-Patman "places emphasis on individual competitive situations, rather than upon a general system of competition," *Staley, supra*, 324 U.S. 753, 65 S.Ct. at 974, this does not mean, as the district court held, that Falls City could not meet a general range of competitors' prices in Kentucky by instituting a single competitive price.[4] The fact that all of Falls City's competitors in Kentucky did not agree upon a single price should not deprive it of the opportunity to meet that competition. It chose to do so by charging a single price statewide, rather than meeting the different prices of other brewers in each county. As noted in *Callaway Mills v. FTC*, 362 F.2d 435, 441 (5th Cir. 1966), the adoption of a *single* pricing system is a perfectly reasonable and proper method of meeting competition. That is all Falls City did in this case.[5]

It is the essence of the free market that a seller will charge as much as competition allows. One can assume that Falls City would charge as high a price as it could in both Kentucky and Indiana, and that it would charge the higher Indiana price in Kentucky if it could. Competition among brewers in Kentucky, however, was evidently stiffer than it was in Indiana, for the prices charged by all brewers was lower in Kentucky. Falls City was therefore forced to charge a lower price in Kentucky to meet

---

3. The Court wrote that Staley would be entitled to a section 2(b) defense "only upon the assumption that the statute permits a seller to maintain an otherwise unlawful system of discriminatory prices, merely because he had adopted it in its entirety, as a means of securing the benefits of a like unlawful system maintained by its competitors." *FTC v. A. E. Staley Mfg. Co.*, 324 U.S. 746, 753, 65 S.Ct. 971, 974, 89 L.Ed. 1338 (1945). *See* Rowe, *Price Discrimination under the Robinson-Patman Act* (1962), pp. 221–22 (*Staley* prevented "a seller from vindicating an otherwise unlawful price discrimination by aping another's illegal price in the context of collusion.").

4. Similarly, the fact that Falls City had to meet competition in Kentucky did not mean it had to lower prices in Indiana. As the Supreme Court noted in *Standard Oil v. FTC*, 340 U.S. 231, 250, 71 S.Ct. 240, 250, 95 L.Ed. 239 (1951), "There is nothing to show a congressional purpose . . . to compel the seller to choose only between ruinously cutting its prices to *all* its customers to match the price offered to *one* or refusing to meet the competition and then ruinously raising its prices to its remaining customers to cover increased unit costs." (emphasis added)

5. The district court also held that Falls City could not claim it was meeting competition because it had not received any threats from Kentucky wholesalers that they would buy beer elsewhere. No seller should ever have to wait to receive such threats before it can meet competitors' *lower* price, and *no case has ever so held.*

the competition there. Such action is the essence of a section 2(b) defense.[6]

---

**6.** I also dissent with respect to the majority's holding that Falls City overcharged Vanco for state taxes. The problem seems to have arisen from a rounding error on Falls City's invoices. Vanco does not dispute that it always paid the price it expected to pay—the announced F.O.B. price at Falls City's loading docks—nor that Falls City paid the State of Indiana exactly what it was due. Only by placing technicality over reality can the majority hold that an overcharge existed.

